Argued and submitted April 29, 1987, resubmitted In Banc April 6, affirmed May 11, reconsideration denied August 12, petition for review denied September 20, 1988

(306 Or 661)

STATE OF OREGON,
*Respondent,*

*v.*

LAWRENCE MELVIN MASTNE,
*Appellant.*

(86-CR-0083-JC; CA A41135 (Control))

STATE OF OREGON,
*Respondent,*

*v.*

BRUCE EDWARD PASSER,
*Appellant.*

(86-CR-0061-JC; CA A41296)
(Cases consolidated)

754 P2d 4

Sally L. Avera, Deputy Public Defender, Salem, argued the cause for appellants. With her on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

RICHARDSON, J.

Graber, J., dissenting.

### RICHARDSON, J.

In these cases, consolidated for trial and appeal, defendants appeal their convictions for robbery in the second degree. The only assignment is that the court erred in imposing dangerous offender sanctions. ORS 161.725. We affirm.

A court may impose an increased term of imprisonment under the dangerous offender statute if it finds that, because of the dangerousness of the defendant, an extended period of imprisonment is necessary. However, before a defendant can be treated as "dangerous," the sentencing must be for either (1) a class A felony or (2) a lesser felony that "seriously endangered the life or safety of another" and, in either case, the defendant must "be suffering from a severe personality disorder indicating a propensity toward criminal activity." ORS 161.725(1), (2). Defendants contend only that there is no basis for a finding that the class B felonies which they committed seriously endangered the life or safety of the victim.

Both defendants waived trial by jury, and the trial to the court was based partly on a stipulation and partly on testimony of the victim. Defendants stipulated that they both had participated in the robbery of the victim, a bookkeeper for a business, and that the robbery was accomplished "by threatening the immediate use of physical force upon [the victim] by pointing a weapon at her."

The victim testified that defendant Passer came to her place of employment, pointed a gun at her and said, "This is a robbery." He took her to a back room where she had been counting some currency and had her put the money in a bag. He taped her hands, bound her to a chair and put tape over her mouth. He said to her, after he noted that she was frightened, "I'm not going to hurt you." Defendant Mastne came into the room as Passer was tying the victim to the chair. He picked up the money bags, and both men left.

Defendants were charged with robbery in the first degree, and the issue for trial was whether the state proved that the gun was loaded in order to establish the indicted charges. The court found both defendants guilty of the lesser included offense of robbery in the second degree.

After the court pronounced its decision, the prosecutor notified the court that the state would request that both defendants be examined by psychiatrists to determine if they should be sentenced under the dangerous offender statute. Defendants filed identical motions seeking denial of the state's request for psychiatric evaluation on the basis that they were being sentenced for a class B felony that did not "seriously [endanger] the life or safety of another." ORS 161.725. The trial court denied the motion after finding that the life or safety of the victim was seriously endangered. *See State v. Follett,* 88 Or App 512, 746 P2d 236 (1987).

Defendants argue, first, that the facts do not support the court's finding. They note that robbery in the second degree does not contain, as an element, the requirement that the victim be endangered. In *State v. Allen,* 68 Or App 5, 680 P2d 997, *rev den* 297 Or 547 (1984), we rejected a similar argument:

> "The focus of the statute is on the circumstances surrounding the commission of the felony, not on its statutory definition. Under [ORS 161.725(2)] the proper inquiry is whether, intended or not, someone's life or safety was *in fact* endangered. *See* Commentary to Oregon Criminal Code § 85 (1971)." 68 Or App at 9. (Emphasis in original.)

Defendants also emphasize that the victim was not harmed and that, when Passer noted that she was frightened, he told her that he was not going to hurt her. The evidence allowed the court to find that two men, one armed with a weapon, accosted a woman, threatened her, bound her to a chair, gagged her and, after stealing the money with which she was entrusted, left her bound in the chair. We conclude that there was sufficient evidence to support the court's finding under ORS 161.725(2). *See State v. Allen, supra.*

Mastne additionally argues that, because the evidence does not show that he had a gun or threatened the victim and that he only participated by picking up the money, he did not personally endanger the victim. Essentially, his argument is that he cannot be held vicariously liable for Passer's conduct for the purposes of determining if he is a dangerous offender. The argument is premised on *State v. Hicks,* 38 Or App 97, 589 P2d 1130 (1979), where the defendant was convicted with a co-defendant for first degree robbery and

first degree rape. He was given an additional sentence under ORS 166.230, which provides for an additional penalty for

> "[a]ny person who commits or attempts to commit any felony * * * while armed with any pistol, revolver, machine gun * * *."

The co-defendant was armed during the commission of the crimes, but the defendant was not. We held that, because the defendant was not armed with a gun, he was not subject to the enhanced penalty provision.

■ ■ The statutory scheme involved in *Hicks,* ORS 166.230, is different from the enhanced penalty provisions of the dangerous offender statute. The former describes the particular conduct that can support an enhanced penalty: committing a felony while armed with a gun. Under the dangerous offender statute, ORS 161.725(2), the type of crime for which the defendant is being sentenced is the predicate for determining whether the enhanced penalty is appropriate. One of two types of felony triggers the dangerous offender inquiry. If a defendant is being sentenced for a class A felony, the court may address the other required findings without having to analyze the dangerousness of the crime. ORS 161.275(1). A defendant who is guilty of a class A felony as an aider or abetter, ORS 161.150, may be sentenced as a dangerous offender without regard to what he actually did during commission of the class A felony. Similarly, ORS 161.725(2) relates to the nature of the lesser felony for which the defendant is sentenced and not to the nature of the defendant's involvement. If the felony seriously endangered another's life or safety, it is irrelevant whether a defendant directly caused that danger. The court did not err in imposing a sentence under ORS 161.725(2).

Affirmed.

**GRABER, J.,** dissenting.

I dissent.

The issue here is whether the trial court erred in imposing "dangerous offender sanctions" under ORS 161.725. The majority suggests that defendants are trying to reargue *State v. Allen,* 68 Or App 5, 680 P2d 997, *rev den* 297 Or 547 (1984), by asserting that robbery in the second degree does not

contain endangerment as an element. That is not defendants' point. They argue simply that the facts in this record do not support a finding that the life or safety of the victim was seriously endangered, so that a requirement of ORS 161.725(2) was not met.[1]

The sparse record consists of a stipulation by counsel and a brief appearance by the victim of the robbery. The parties agreed that both defendants participated in a robbery at about 8:30 a.m. on February 24, 1986, in Deschutes County. They entered a real estate office and stole money; defendant Passer pointed a gun at the bookkeeper. The bookkeeper was alone in the office at the time of the robbery.

The trial court found that the state had failed to prove that Passer's gun was loaded. Accordingly, defendants were convicted of robbery in the second degree.

The bookkeeper testified that, when she responded to a knock on the door, Passer pointed a gun at her right side and said, "This is a robbery." He held the gun about an inch from her rib cage; she could not recall whether the gun touched her. Passer walked her into an interior office and told her to put money into a bag; she did so. Passer had her sit down and then stand up again. He taped her wrists together behind her back, sat her down again, taped her to the chair, and put tape across her mouth. She was frightened and shaking. While Passer was putting tape across her mouth, he said, "I'm not going to hurt you."

As Passer was placing the tape, Mastne appeared, wearing a mask. The victim had her back to Mastne and never saw whether he had a gun. She did not testify to any statements by Mastne. The two defendants took the money and left.

Neither defendant threatened to hit the victim with the gun (or, apparently, with anything else). After the initial encounter at the front door, she did not see a gun again. She was not physically injured. After defendants left, she was able to get up and walk down the hallway to an adjoining office,

---

[1] Defendants do not challenge the trial court's finding that they suffered from "a severe personality disorder indicating a propensity toward criminal activity." ORS 161.725(2).

where she informed others of what had happened. (That last fact was stated by defense counsel and not challenged by the district attorney, but was not testified to directly.)

The trial court imposed dangerous offender sanctions under ORS 161.725(2). One of the findings a trial court must make is that the felony "seriously endangered the life or safety of another." *State v. Allen, supra,* 68 Or App at 9, held that the proper inquiry is whether "someone's life or safety was *in fact* endangered." (Emphasis in original.) That standard is not met here.

The statute contemplates physical peril, rather than the terror that goes with being a victim. "Safety" means physical safety, rather than peace of mind. If it were otherwise, the fear that accompanies any "in person" criminal encounter would suffice to justify the enhanced penalty under ORS 161.725(2) in every face-to-face felony. The statute directs us to inquire about the *objective dangerousness of the offender,* however, not the subjective level of fear experienced by a victim. Whether or not we agree with this focus, it is the focus the legislature has mandated. It is not enough for the victim to be placed in "some" danger; the endangerment must be "serious." In other words, the statute requires a finding that a defendant's acts, objectively viewed, created a serious risk of death or injury to another.

If *State v. Allen, supra,* means that *every* instance of binding and gagging a second degree robbery victim meets the test, then it is wrong. *See* 68 Or App at 9; *see also State v. Mitchell,* 84 Or App 452, 456-67, 734 P2d 379 (1987). If *Allen* means that the answer depends on what took place, then this record fails to support a conclusion of serious endangerment. To be bound and gagged (a physical restraint) and frightened by an unloaded gun (an "implied" threat) is undeniably horrid, but it is not in fact a "serious" danger to "life or safety." Certainly some instances of binding and gagging a second degree robbery victim seriously endanger the victim, such as rough handling, binding so tightly as to cut off circulation, leaving someone in an isolated location or at an isolated time of day, threatening additional harm, or placing someone in a very hot or very cold environment. That is not this case. Because it is not, the state failed to prove that ORS 161.725 applies. Therefore, I dissent.

Warden and Warren, JJ., join in this dissent.