No. 89-428

IN THE SUPREME COURT OF THE STATE OF MONTANA

1989

STATE OF MONTANA,

        Plaintiff and Respondent,

-vs-

TONI LEA OTTWELL,

        Defendant and Appellant.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis & Clark,
The Honorable Jeffrey Sherlock, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

    Michael Donahoe, Helena, Montana

    For Respondent:

        Hon. Marc Racicot, Attorney General, Helena, Montana
James Yellowtail, Asst. Atty. General, Helena
Mike McGrath, County Attorney; Carolyn Clemens, Deputy,
Helena, Montana

Submitted on Briefs: Nov. 2, 1989

Decided: December 22, 1989

Filed:

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Toni Lea Ottwell appeals the decision of the First Judicial District Court, Lewis and Clark County, revoking the appellant's ten-year suspended sentence after her flight from parole. We affirm.

The appellant raises the single issue of whether the District Court erred in failing to hold that her flight from parole was justified under the necessity doctrine when the appellant alleged that her foster parent coerced her into a sexual relationship.

In December of 1987, Ottwell escaped from the Mountain View School girls correctional facility near Helena, Montana. When school officials attempted to return Ottwell to the school, she threatened them with a handgun. Ottwell was convicted of felony assault and given a ten-year suspended sentence. See State v. Ottwell (Mont. 1989), 779 P.2d 500, 46 St.Rep. 1580 (upholding Ottwell's felony assault conviction).

The District Court placed a number of conditions on Ottwell's suspended sentence including ten years probation, psychological therapy, a period of intensive supervision, placement in a Billings, Montana, foster home, continued high school education, and general compliance with the laws. Initially, Ottwell conformed to these conditions and her supervision was gradually relaxed until she was allowed to move out of the foster home. In March of 1989, probation officers discovered that Ottwell had absconded from her Billings residence; she had been arrested in Oakland, California, for prostitution.

On her return to Montana, the District Court revoked the suspended sentence and sentenced Ottwell to the Women's Correctional Facility with the recommendation that she be transferred to the Life Skills Center in Billings, Montana.

The sentencing judge is authorized in his discretion to revoke a suspended sentence. Section 46-18-203(1), MCA. In reviewing the

2

use of that discretion, the standard is whether the record contains substantial, credible evidence supporting the sentencing court's decision. State v. Lange (Mont. 1989), 775 P.2d 213, 215, 46 St.Rep. 991, 994.

In this case, the record contains considerable uncontested evidence that Ottwell violated her probation conditions. She left her Billings residence for Oakland without permission from her probation officer. She failed to remain in school. She failed to comply with the law by soliciting prostitution in California.

Ottwell argues that, even in light of this evidence, the District Court should not have revoked her suspended sentence because she absconded from Billings out of necessity. Ottwell alleges that while in the foster home, the male guardian coerced her into a sexual relationship which continued after she moved into her own residence. She contends that had she not complied with his demands, the guardian would have forced her return to jail.

The parties apparently disagree on what defense the appellant is raising. Ottwell calls it necessity and relies on the common law rather than the Montana statutes. The State counters that the alleged defense is that of compulsion, as recognized in Montana law under section 45-2-212, MCA.

Some disagreement over the proper analysis is not surprising considering the present state of this area of Montana law. As with other jurisdictions, Montana has referred to this type of defense by a variety of names. Section 45-2-212, MCA ("compulsion"); State v. Pease (Mont. 1988), 758 P.2d 764, 768, 45 St.Rep. 1296, 1300 ("necessity," "duress," and "compulsion"), cert. den. 109 S.Ct. 845 (1989); State v. Strandberg (1986), 223 Mont. 132, 135, 724 P.2d 710, 712 ("justification"); State v. Owens (1979), 182 Mont. 338, 347, 597 P.2d 72, 77 ("compulsion"); State v. Stuit (1978), 176 Mont. 84, 88, 576 P.2d 264, 266 ("justification" and "necessity"). In two cases, this Court relied on the common law defense.

3

Strandberg, 223 Mont. at 135, 724 P.2d at 712-13; Stuit, 176 Mont. at 88, 576 P.2d at 266. In another case, we applied the compulsion statute. Owens, 182 Mont. at 347, 597 P.2d at 77. In the most recent case we used both. Pease, 758 P.2d at 768, 45 St.Rep. at 1300.

Traditionally, courts recognized necessity as one of only two defenses of this type, the other being duress. Both types excused criminal conduct when the defendant acted under the threat of imminent death or serious bodily harm to himself or another. Duress applied when the threat was from another human being. Necessity applied when the threat was from physical forces. United States v. Bailey (1980), 444 U.S. 394, 409-10, 100 S.Ct. 624, 634, 62 L.Ed.2d 575, 590; see also 1 W. LaFave & A. Scott, Jr., Substantive Criminal Law, §§ 5.3(a) and 5.4(a). Thus, duress could be a defense to bank robbery for a taxi driver who drove the robber to the bank with a gun pointed at his head. People v. Merhige (Mich. 1920), 180 N.W. 418, 422. Necessity could be a defense to prison escape when the prison was on fire. People v. Whipple (Cal.App. 1929), 279 P. 1008, 1009.

The necessity defense has also been characterized by situations in which the defendant faced a choice between two evils. In this type of case, defendants argued that they were justified in breaking the law to prevent a greater harm than the law was intended to cure. Thus, in one case, the defendants claimed necessity as a defense to charges of smuggling Laetrile into the United States to treat cancer patients. United States v. Richardson (9th Cir. 1978), 588 F.2d 1235, 1239, cert. den. 440 U.S. 947, 99 S.Ct. 636. In another, a defendant who felt a moral obligation to frustrate United States military efforts in Southeast Asia claimed necessity as a defense to charges of burning Selective Service System records. United States v. Simpson (9th Cir. 1972), 460 F.2d 515, 517-18.

4

Modern cases and statutes tend to abandon all distinctions characterizing necessity, duress, and other similar defenses. See Bailey, 444 U.S. at 410, 100 S.Ct. at 634, 62 L.Ed.2d at 590. Montana's compulsion statute follows this trend.

> A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or serious bodily harm if he reasonably believes that death or serious bodily harm will be inflicted upon him if he does not perform such conduct.

Section 45-2-212, MCA.

The statute contains no distinctions based on compulsion by human beings, compulsion by natural forces, or by choices between lesser evils. It brings together all of the related defenses, by whatever name called, under a single codification.

One apparent exception to the statutory amalgamation is still found in Montana criminal case law. When dealing with prisoners charged with escape, this Court has not applied the compulsion statute. Instead, we have relied on a more appropriate version of the necessity doctrine derived from the California case of People v. Lovercamp (1974), 43 Cal.App.3d 823, 118 Cal.Rep. 110. In State v. Stuit we approved jury instructions derived from Lovercamp and held that justification is an affirmative defense which the defendant must prove by a preponderance of the evidence. Stuit, 176 Mont. at 89, 576 P.2d at 267. Most recently, in State v. Strandberg, we restated the essential elements of a necessity-of-escape defense:

> 1) The defendant was faced with a specific threat of death, or substantial bodily injury in the immediate future.

5

2) There is no time for a complaint to the authorities or there exists a history of futile complaints which makes any result from such complaints illusory.

3) There is not time or opportunity to resort to the courts.

4) The prisoner immediately reports to the proper authorities when he has attained a position of safety from the immediate threat.

Strandberg, 223 Mont. at 135, 724 P.2d at 712-13.

To justify an escape under these elements, the defendant must "establish by a preponderance of the evidence that escape is objectively the only viable and reasonable choice available under the circumstances." Strandberg, 223 Mont. at 135, 724 P.2d at 713. (Emphasis deleted.)

The courts have long recognized that necessity may excuse escape from a prison when warranted by appropriate circumstances. 1 Hale, Pleas of the Crown 611 (1778). In the classic statement of the doctrine, when a prisoner flees a fire, "he is not to be hanged because he would not stay to be burnt." United States v. Kirby (1868), 7 Wall. 482, 487, 19 L.Ed. 278, 280. Use of the necessity defense in this context is now universally accepted. Bailey, 444 U.S. at 425, 100 S.Ct. at 642, 62 L.Ed.2d at 600 (J. Blackmun dissenting); see also, Annotation, Duress, Necessity, or Conditions of Confinement as Justification for Escape from Prison, 69 A.L.R.3d 678 (1976 & 1989 Supp.).

In Montana, necessity as a defense to prison escapes overlaps significantly with the compulsion statute. The elements of the statute are:

(1) [The defendant] was compelled to perform the offensive conduct (2) by the threat or

6

menace (3) of the imminent infliction (4) of death or serious bodily harm, and that (5) he believed that death or serious bodily harm would be inflicted upon him if he did not perform such conduct, and (6) his belief was reasonable.

Owens, 182 Mont. at 347, 597 P.2d at 77. (Emphasis deleted.) Neither distinguishes between natural or human causes. Both impose an objective standard and define the harm faced as death or serious bodily injury. The futility of complaints and resort to the courts required by Strandberg go to the statutory requirement that the defendant was compelled to act and that the resulting actions were objectively reasonable. Under both, the threatened harm must occur imminently or in the immediate future. The statutory and common law defenses differ most markedly in that Strandberg requires the defendant to report immediately to the proper authorities. This is a reasonable additional requirement for prison escapes. An analogous requirement in cases brought under the compulsion statute may be imposed in appropriate circumstances by the legal duty to report a felony. See section 45-7-305, MCA.

We conclude that the compulsion statute and necessity doctrine of Strandberg do not provide mutually exclusive defenses; they are complimentary. Strandberg is merely an application of the compulsion statute tailored to the circumstances of prison escapes. When dealing with prison escapes, therefore, Strandberg provides the appropriate analysis.

The Strandberg elements are also appropriate in the present case; as the appellant argues, absconding from parole is analogous to prison escape. In the context of this review, the question is whether the record contains substantial, credible evidence to establish the elements of the necessity defense by a preponderance. We hold that it does not.

The first element requires that the defendant be faced with a specific threat of death, or substantial bodily injury in the immediate future. Many courts have considered the defense of necessity when the defendant faced sexual abuse. Most often the defendants faced choices between homosexual rape or severe beatings and possible death. See e.g., _Lovercamp_, 43 Cal.App.3d at 825, 118 Cal.Rep. at 111; People v. Unger (Ill. App. 1975), 338 N.E.2d 442, 443; 69 A.L.R.3d 678, § 8, supra. Ottwell presented uncontested evidence of a coerced sexual relationship. We need not determine whether that evidence was sufficient to satisfy this element of the necessity defense because Ottwell failed to present any evidence to support the remaining elements.

Ottwell failed to report the alleged sexual coercion even though she had ample opportunity to do so. According to the evidence, she developed a close relationship with her parole officer. On numerous occasions they discussed her home life, including Ottwell's life with her foster parents. The appellant admits that she never told her parole officer of sexual harassment. She did not report it to the police, the courts, or anyone else. Ottwell also failed to report to the proper authorities once she escaped but instead was arrested for prostitution. Even then, the appellant apparently did not explain her flight by telling Oakland police about the alleged sexual relationship. If the alleged sexual coercion occurred, Ottwell passed up numerous opportunities to remedy the situation short of violating parole.

We hold the record contains sufficient evidence to reject the appellant's necessity defense and to uphold revocation of her suspended sentence.

Affirmed.

J. A. Turnage
Chief Justice

8

We concur:

_____
Diane G. Barz

_____

_____
R. C. McDonough
Justices

9

Justice John C. Sheehy, dissenting:


I am unwilling to sign an opinion which holds that uncontested evidence of a coerced sexual relationship, without more, is not sufficient to justify a parolee to escape the situation.

_____
                    Justice