Nos. 92-407 and 92-443

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

CITY OF HELENA,
      Plaintiff and Respondent,

-vs-

JOHN T. LEWIS,
      Defendant and Appellant.

**FILED**

SEP 2 0 1993

_Cal Smith_
CLERK OF SUPREME COURT,
STATE OF MONTANA

CITY OF HELENA,
      Plaintiff and Respondent,

-vs-

CLAIRE BRISENDINE,
      Defendant and Appellant.

APPEAL FROM:    District Court of the First Judicial District,
                In and for the County of Lewis and Clark,
                Hon. Thomas C. Honzel, Judge presiding in No. 92-407
                Hon. Jeffrey Sherlock, Judge presiding in No. 92-443

COUNSEL OF RECORD:

      For Appellants:

            Patrick F. Flaherty, Attorney at Law, Great Falls
            Montana

      For Respondent:

            Hon. Joseph P. Mazurek, Attorney General, Patricia
            J. Jordan, Asst. Attorney General, Helena, Montana

            Robert Wood, Assistant City Attorney, Helena,
            Montana

Submitted on Briefs:  May 20, 1993

Decided:  September 20, 1993

Filed:

_____
                        Clerk

Justice Karla M. Gray delivered the Opinion of the Court.

Appellants Claire Brisendine and John Lewis appeal from separate orders of the First Judicial District Court, Lewis and Clark County, finding Claire Brisendine guilty of criminal trespass and disorderly conduct and John Lewis guilty of criminal trespass. The appeals were consolidated pursuant to order of this Court. We affirm.

We phrase the issues on appeal as follows:

1) Did the District Court err in granting the City's motion in limine to prohibit the Defendants from introducing evidence regarding the defenses of necessity and justifiable use of force?

2) Did the District Court properly instruct the jury in Lewis' case?

3) Did the Defendants possess the requisite mental state for conviction under the criminal trespass and disorderly conduct statutes?

4) Did the prosecution wrongfully withhold exculpatory material from the Defendants in violation of Brady v. Maryland?

Claire Brisendine (Brisendine) and John Lewis (Lewis) attended a demonstration at the Intermountain Planned Parenthood Clinic (Clinic) in Helena, Montana, on December 6, 1991. "No trespassing" signs were posted around the perimeter of the property, and a statewide injunction forbidding all but patients and staff from entering the Clinic premises also was posted. People in groups of three, Lewis and Brisendine included, had joined themselves

2

together at the neck with bicycle locks and were sitting in triangular patterns in front of the doorway to the Clinic. The Helena City Police were called to the Clinic and informed the demonstrators that they were trespassing. Both Brisendine and Lewis refused to leave when asked to do so by the Clinic director and the police. The Helena Fire Department arrived and cut off the bicycle locks. Lewis and Brisendine, among others, were arrested. Brisendine was charged in City Court with criminal trespass and disorderly conduct; Lewis was charged with criminal trespass.

After their convictions in City Court, both Brisendine and Lewis appealed to the District Court. Brisendine was represented by counsel in District Court; Lewis appeared pro se throughout the proceedings. In both cases, the City promptly filed a motion in limine requesting the District Court to prohibit Brisendine and Lewis from making any references to the propriety of abortion or any other matters that were not relevant to the charges of criminal trespass and disorderly conduct. In response to the City's motion in limine, Brisendine filed notice of the affirmative defense of justifiable use of force under § 45-3-102, MCA, and also filed a motion to dismiss the charges.

In Brisendine's case, District Court Judge Jeffrey Sherlock granted the City's motion in limine and denied Brisendine's motion to dismiss. At a bench trial held July 31, 1992, Brisendine waived her right to a jury trial and stipulated that she had been on the Clinic's private property and had obstructed ingress and egress to the Clinic. Over the City's objection, Brisendine made an offer of

3

proof, testifying briefly as to the motivations behind her actions. On August 3, 1992, the District Court issued an order finding Brisendine guilty of disorderly conduct and criminal trespass and reinstating the sentence previously imposed by the City Court. Her sentence was stayed pending appeal.

In Lewis' case, District Court Judge Thomas Honzel granted the City's motion in limine. The charge against Lewis proceeded to trial, and the jury found him guilty of criminal trespass. The court sentenced Lewis to 180 days in jail, with 179 days suspended and credit for one day served, imposed a $300 fine, and assessed jury costs. Judgment against Lewis was entered on June 23, 1992. Both Brisendine and Lewis appealed.

On November 5, 1992, this Court granted Lewis' and Brisendine's motion to consolidate the two cases. Although they presented distinct arguments regarding their defenses to the District Court, Brisendine and Lewis have filed a consolidated brief on appeal. Therefore, for purposes of discussing their arguments, Brisendine and Lewis will be referred to collectively as the Defendants.

Did the District Court err in granting the City's motion in limine to prohibit the Defendants from introducing evidence regarding the defenses of necessity and justifiable use of force?

In Brisendine's case, the District Court reasoned that her opposition to the motion in limine centered around her argument that Roe v. Wade (1973), 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147, was incorrectly decided. The District Court concluded that the activities at the Clinic were legal, and that it could not

4

overrule <u>Roe v. Wade</u>. For that reason, the court ruled that the defense of necessity was not appropriate, nor was reference to any other matter dealing with the abortion process. In granting the City's lengthy motion in limine, the District Court allowed Brisendine to indicate why she was acting as she did on December 6, 1991, but prohibited her from an "extended foray" into the issues surrounding abortion. In Lewis' case, the District Court also granted an identical motion in limine, but did so without explanation of record.

On appeal, the Defendants primarily challenge the following provision of the motion in limine, which excluded all

> "legal arguments" or "legal documents" deemed inadmissible as a matter of law, including but not limited to the "necessity defense," "justifiable use of force" defense, treaties, biblical or moral justification for their actions, arguments that abortion is illegal, <u>Roe v. Wade</u> is bad law, or that the charges filed against the Defendant are unconstitutional.

The Defendants assert that they were improperly "gagged" from referring to their defenses at trial. The City asserts that because the defenses are inapplicable as a matter of law, they are necessarily irrelevant under Rule 402, M.R.Civ.P., and, therefore, properly excluded by the motions in limine.

"The purpose of a motion in limine is to prevent the introduction of evidence which is irrelevant, immaterial, or unfairly prejudicial." Feller v. Fox (1989), 237 Mont. 150, 153, 772 P.2d 842, 844. Accordingly, the authority to grant or deny a motion in limine "rests in the inherent power of the court to admit or exclude evidence and to take such precautions as are necessary

5

to afford a fair trial for all parties." Feller, 772 P.2d at 844, quoting Wallin v. Kenyon Estate (1974), 164 Mont. 160, 165, 519 P.2d 1236, 1238. Thus, we will not overturn a district court's grant of a motion in limine absent an abuse of discretion. See Feller, 772 P.2d at 844; State v. Oman (1985), 218 Mont. 260, 264, 707 P.2d 1117, 1119. Keeping this standard in mind, we review the District Courts' decisions to exclude the evidence regarding their asserted defenses.

This Court recently clarified the applicability of the "necessity" defense in Montana and concluded that the defense has been codified in § 45-2-212, MCA. State v. Ottwell (1989), 240 Mont. 376, 379, 784 P.2d 402, 404. In Ottwell, we explained that the defenses of necessity, justification, compulsion, duress, and the "choice of two evils" have been merged statutorily and labeled "compulsion" under § 45-2-212, MCA. Ottwell, 784 P.2d at 404. Thus, the common law elements and distinctions between the aforementioned defenses are no longer applicable in Montana, with one exception which is inapplicable here. Ottwell, 784 P.2d at 404; see also State v. Pease (1988), 233 Mont. 65, 71, 758 P.2d 764, 768. Therefore, we apply the elements of § 45-2-212, MCA, to the case before us.

Montana's compulsion statute reads:

A person is not guilty of an offense, other than an offense punishable with death, by reason of conduct which he performs under the compulsion of threat or menace of the imminent infliction of death or serious bodily harm if he reasonably believes that death or serious bodily harm will be inflicted upon him if he does not perform such conduct.

6

Section 45-2-212, MCA. The compulsion defense does not include imminent threats of harm to a third party. State v. Spalding (1991), 247 Mont. 317, 321, 806 P.2d 1029, 1032. The statute does not excuse criminal conduct unless the person asserting the defense reasonably believes that death or serious bodily injury will be inflicted upon him if he does not perform the criminal act.

The Defendants have not alleged that they reasonably believed that death or serious bodily injury would be inflicted upon them if they did not trespass on the Clinic's property. Therefore, the defense of compulsion, which the Defendants characterize as the defense of necessity and/or justification, does not apply to this case. We conclude that the District Court did not err in concluding that the "necessity" defense was inappropriately raised by the Defendants.

The Defendants rely exclusively on a Kansas district court case, City of Wichita v. Tilson (Kan. Dist. Ct. 1992), No. 91 MC 108, to support their argument on appeal. This reliance is misplaced for several reasons. First, the result is based on the court's analysis of the common law defense of "choice of evils," which the court alternatively denominates as "justification by necessity." As explained, these defenses are included in the statutory amalgamation of § 45-2-212, MCA, in Montana; the common law elements are not recognized here. In addition, the case is presently on appeal to the Kansas Supreme Court. Moreover, the Kansas Legislature recently amended its trespass statute to specifically include "remaining upon private land or structure in

7

a manner that interferes with access to or from any health care facility." (See Kansas H.B. 2646 Sec. 6(a)(2), which became effective July 1, 1992, after the Tilson defendant's criminal acts occurred). As conceded by Kansas trial court, the same facts may very well yield different results under the amended statute.

Finally, the great weight of authority is decidedly against the Kansas district court's reasoning in City of Wichita. The following cases have rejected the choice of evils or necessity defense in similar factual situations: Allison v. City of Birmingham (Ala. Crim. App. 1991), 580 So.2d 1377; Cleveland v. Municipality of Anchorage (Alaska 1981), 631 P.2d 1073; Pursley v. State (Ark. App. 1987), 730 S.W.2d 250; People v. Garziano (Cal. App. 1991), 230 Cal.App.3d 241, 281 Cal.Rptr. 307; State v. Anthony (Conn. App. 1991), 588 A.2d 214; Gaetano v. United States (D.C. App. 1979), 406 A.2d 1291; Hoover v. State (Ga. App. 1991), 402 S.E.2d 92; People v. Krizka (Ill. App. 1980), 416 N.E.2d 36; Sigma Reproductive Health Center v. State (Md. App. 1983), 467 A.2d 483; City of St. Louis v. Klocker (Mo. App. 1982), 637 S.W.2d 174; State v. Thomas (N.C. App. 1991), 405 S.E.2d 214; State v. Sahr (N.D. 1991), 470 N.W.2d 185; City of Kettering v. Berry (Ohio App. 1990), 567 N.E.2d 316; State v. Clowes (Or. 1990), 801 P.2d 789; Commonwealth v. Wall (Pa. Super. 1988), 539 A.2d 1325; Crabb v. State (Tex. App. 1988), 754 S.W.2d 742; Buckley v. City of Falls Church (Va. App. 1988), 371 S.E.2d 827.

The Defendants also argue that the District Court erred in excluding evidence regarding "justifiable use of force." In the

8

District Court, Brisendine filed notice of her intent to assert this affirmative defense, relying on § 45-3-102, MCA. On appeal, the Defendants mention the defense in passing but do not explain its applicability to their situation; nor do they cite any applicable authority.

Section 45-3-102, MCA, reads in pertinent part:

A person is justified in the use of force or threat to use force against another when and to the extent that he reasonably believes that such conduct is necessary to defend himself or another against such other's imminent use of unlawful force. . . .

The plain language of the statute clearly limits the applicability of the defense to situations in which the aggressor's force is "unlawful." As noted by the Criminal Law Commission Comments to § 45-3-102, MCA, unlawful includes either criminal or tortious force or threat of force. See also State v. Kills On Top (1990), 243 Mont. 56, 94, 793 P.2d 1273, 1299.

Even assuming the Defendants' acts of criminal trespass properly could be characterized as the use of force against the Clinic and, similarly, that the Clinic's activities could be characterized as the use of force, the Defendants have not proved or even alleged that any of the Clinic's activities were "unlawful" under § 45-3-102, MCA. Because all statutory elements must be satisfied to assert the defense of justifiable use of force, we need not analyze the remaining elements of the defense; justifiable use of force is simply not applicable to the facts of this case.

The Defendants also assert several "historical defenses"-- comparing abortion to nazism, slavery, and euthanasia--and

arguments concerning when life begins and the constitutionality of the criminality of their conduct. We concur with the City's characterization of these arguments; all are based on the Defendants' belief that Roe v. Wade was wrongly decided. The District Court's conclusion that it could not overturn the United States Supreme Court's decision in Roe v. Wade is equally applicable to this Court. That prerogative is left to the United States Supreme Court which, quite recently, reaffirmed the essential holding of Roe v. Wade in Planned Parenthood v. Casey (1992), 505 U.S. \_\_\_, \_\_\_, 112 S.Ct. 2791, 2804, 120 L.Ed.2d 674, 694.

Behind the Defendants' appeal is their choice to pursue their personal beliefs in violation of the law. We repeat the language of the Superior Court of Pennsylvania, which stated:

> We live in a society of laws and no individual is entitled to raise himself above the law. We are each bound by the law no matter its source. If we were free to pick and choose which laws we wished to obey, the result would be a society of strife and chaos . . . Democracy allows the citizenry to protest laws of which they disapprove. But they must nonetheless obey such laws or face the legal consequences.

Commonwealth v. Markum (Pa. Super. 1988), 541 A.2d 347, 350. The Alaska Supreme Court also acknowledged the citizen's right to protest a law if he or she believes the protest is necessary in pursuit of a moral cause, but emphasized that:

> [t]hey [philosophers and religionists discussing civil disobedience] have been in general agreement that while in restricted circumstances a morally motivated act contrary to law may be ethically justified, the action must be non-violent and the actor must accept the penalty for his action. In other words, it is commonly conceded that the exercise of a moral judgment based upon

10

individual standards does not carry with it legal justification or immunity from punishment for breach of the law.

Cleveland, 631 P.2d at 1084.

The same reasoning applies to the Defendants here. Lewis and Brisendine are entitled to hold and act upon their personal beliefs. Those personal beliefs, however, do not afford the Defendants immunity from the law. They must accept the legal consequences of their choice to trespass on the Clinic's property.

Having concluded that none of the defenses asserted by the Defendants are applicable to this case, we hold that the District Courts did not abuse their discretion in granting the City's motions in limine.

Did the District Court properly instruct the jury in Lewis' case?

The Defendants argue that the District Court erred in refusing to instruct the jury on Lewis' theory of the case. The Defendants do not, however, identify which instructions were wrongly given or wrongly refused. Therefore, we can only assume that this argument merely carries forward the Defendants' earlier arguments concerning the defenses of necessity and justifiable use of force.

A district court need not instruct on an issue if the subject matter of the instruction is not applicable to the facts or not supported by the evidence introduced at trial. See Webcor Electronics v. Home Electronics (1988), 231 Mont. 377, 381, 754 P.2d 491, 493. Having determined that the defenses asserted by the Defendants are not applicable to the facts of this case, we

11

conclude that the District Court did not err in instructing the jury.

Did the Defendants possess the requisite mental state for conviction under the criminal trespass and disorderly conduct statutes?

The Defendants assert that they did not possess the requisite intent under either § 45-6-203, MCA, or § 45-8-101, MCA. They claim that because they did not "intend to break the law," they did not possess a criminal "mens rea" and their convictions should be set aside. This argument verges on the frivolous, as those concepts of criminal mental state were replaced long ago. See State v. Crabb (1988), 232 Mont. 170, 176, 756 P.2d 1120, 1124.

Under the criminal trespass statute, § 45-6-203, MCA, the City had to establish that the Defendants "knowingly" remained unlawfully upon the premises of another. Under § 45-8-101(f), MCA, the disorderly conduct statute, the City had to show that Brisendine "knowingly" disturbed the peace by blocking free ingress or egress to a private place. Testimony established that the Defendants remained on the Clinic's property after they were told they were trespassing and were asked to leave. Brisendine stipulated that she knowingly blocked the free ingress to the Clinic. Therefore, we conclude that the City adequately proved the mental state required by the statutes at issue.

Did the prosecution wrongfully withhold exculpatory material from the Defendants in violation of Brady v. Maryland?

The Defendants assert that the District Court's refusal to admit their proffered evidence regarding their asserted defenses

12

amounted to an unconstitutional withholding of exculpatory evidence, citing Brady v. Maryland (1963), 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215. The most minimal inquiry into the subject would have revealed that Brady is not remotely applicable to the Defendants' situation. The United States Supreme Court in Brady held that suppression by the prosecution of evidence favorable to the accused after such evidence was requested in discovery violates due process where the evidence is material to either guilt or punishment. Brady, 373 U.S. at 87, 83 S.Ct. at 1196-7, 10 L.Ed.2d at 218.

Here, the Defendants at all times possessed the material they claim was "wrongfully withheld." The City did not withhold exculpatory material in violation of Brady, nor have the Defendants argued that the City possessed the disputed information. The District Court's refusal to admit the evidence is totally unrelated to the constitutional principles espoused in Brady. The Defendants' argument is without merit.

Affirmed.

Justice

We concur:

Chief Justice

13

_John Conway Harrison_

_Terry Trieweiler_

_Fred Nelson_
_____
Justices

_Ted L. Mizner_

The Honorable Ted Mizner, Judge
of the District Court, sitting
for Justice James C. Nelson

14