No. 93-370

IN THE SUPREME COURT OF THE STATE OF MONTANA

1994

STATE OF MONTANA,

      Plaintiff and Respondent,

v.

ROBERT DEE CLOSE,

      Defendant and Appellant.

FILED

SEP 15 1994

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Third Judicial District,
In and for the County of Powell,
The Honorable Ted L. Mizner, Judge presiding.

COUNSEL OF RECORD:

      For Appellant:

          Gregory A. Jackson, Jackson & Rice, Helena, Montana

          William F. Hooks, Appellate Defender, Helena, Montana

      For Respondent:

          Honorable Joseph P. Mazurek, Attorney General;
Joseph E. Thaggard and Barbara C. Harris, Assistant
Attorneys General, Helena, Montana

          Christopher Miller, County Attorney, Deer Lodge, Montana

Submitted on Briefs:   June 24, 1994

Decided:   September 15, 1994

Filed:

_____

Clerk

Chief Justice J. A. Turnage delivered the Opinion of the Court.

Robert Dee Close was convicted in a jury trial in the District Court for the Third Judicial District, Powell County, of burglary, five counts of deliberate homicide, and sexual intercourse without consent by accountability. He appeals. We affirm.

The issues are:

1. Did the District Court err in refusing to instruct the jury on the defense of necessity?

2. Did the court err in allowing admission of the autopsy photographs of the five homicide victims?

3. Did the court err in denying Close's motion to dismiss on the ground that the State failed to preserve evidence?

Close concedes in his reply brief that a fourth issue raised in his opening brief was not properly preserved for appeal. Therefore, we shall not address that issue.

On September 22, 1991, inmates in the maximum security unit at the Montana State Prison took control of the building. When correctional officers regained control four hours later, five protective custody inmates housed in cellblock D had been killed. The facts of the riot are set forth in greater detail in our opinion in State v. Gollehon (1993), 262 Mont. 293, 864 P.2d 1257.

Robert Close was an inmate on cellblock C of the maximum security unit at the time of the riot. The information filed against him charged him with burglary, five counts of deliberate homicide, and sexual intercourse without consent by accountability. As to the burglary charge, the information alleged that Close

2

knowingly entered or remained unlawfully in an occupied
structure, the D block area of the maximum security unit,
with the purpose to commit an offense therein, namely,
Riot.

Each of the five separate deliberate homicide counts stated that

with the purpose of promoting or facilitating the offense
of burglary, [Close] aided, abetted or attempted to aid
other inmates in the maximum security unit in the
planning or commission of the offense of burglary and in
the course of said burglary, [Close] or other persons
legally accountable for said burglary, caused the death
of [one of the five victims].

The count of sexual intercourse without consent charged that Close,

with the purpose of promoting or facilitating the
commission of the offense of Sexual Intercourse Without
Consent, aided, abetted or attempted to aid Brian Spray
in the planning or commission of the offense of Sexual
Intercourse Without Consent against Inmate Doe.

The jury found Close guilty of all charges filed against him.  He
appeals.

## ISSUE 1

Did the District Court err in refusing to instruct the jury on
the defense of necessity?

In his defense to the State's evidence at trial concerning his
activities during the prison riot, Close testified that the only
reason he entered cellblock D, where the five homicides occurred,
was because an inmate housed on that cellblock asked him to come
there.  Close testified that he only entered D block in response to
a message conveying the request of that inmate, Dan Willson; that
he assured Willson he would do what he could to protect him from
the other rioting inmates; and that he then returned to his own
cellblock.  He claims that he went to cellblock D of necessity, to
prevent the imminent threat of death or serious bodily injury to

3

Willson. Close offered two jury instructions concerning the defense of necessity, but the District Court refused both of them.

Close argues that the defense of necessity is a separate common law defense from the defense of compulsion now codified at § 45-2-212, MCA. However, at the settling of jury instructions, Close's counsel acknowledged that "the statement of the law in regard to compulsion and necessity is said to be the same." In State v. Ottwell (1989), 240 Mont. 376, 784 P.2d 402, this Court recognized that § 45-2-212, MCA, abandons the distinction between the related defenses of necessity, duress, and compulsion and represents a "statutory amalgamation." "It brings together all of the related defenses, by whatever name called, under a single codification." Ottwell, 784 P.2d at 404.

In City of Helena v. Lewis (1993), 260 Mont. 421, 860 P.2d 698, this Court restated the scope of the defense of necessity or compulsion under the statute: "[Section 45-2-212, MCA] does not excuse criminal conduct unless the person asserting the defense reasonably believes that death or serious bodily injury will be inflicted upon him if he does not perform the criminal act." Lewis, 860 P.2d at 701 (emphasis in original).

Close's claim that he was entitled to jury instructions on the necessity defense is based on an alleged threat of death or serious bodily injury to another person, Willson. Under our holding in Lewis, the necessity defense is limited to situations in which the defendant reasonably believes there is a threat against the defendant himself. The necessity defense has no application here.

4

If the jury had believed Close's defense, it could have properly found that the burglary charge had not been proven because of failure of the State to establish the element of intent beyond a reasonable doubt. We hold that the District Court did not err in refusing Close's offered instructions on the defense of necessity.

ISSUE 2

Did the court err in allowing admission of the autopsy photographs of the five homicide victims?

This Court recently ruled that the same autopsy photographs which are at issue in this case were admissible in the trial of another person facing charges out of the September 22, 1991 riot at Montana State Prison. In Gollehon, 864 P.2d at 1263, we set forth the standard that, when considering whether photographs should be admitted as evidence at trial, the court must determine whether their probative value is substantially outweighed by the danger of unfair prejudice, citing Rule 403, M.R.Evid., and State v. Henry (1990), 241 Mont. 524, 788 P.2d 316. We noted that the autopsy photographs were offered in that case, as they were in the present case, to prove the means by which the victims were killed and to corroborate the testimony of the inmates who described what they heard or saw in cellblock D during the riot. We pointed out that although the photographs were graphic depictions of the assaults committed against the victims, they were only exhibited during the State Medical Examiner's testimony and the jury was not allowed to take them into deliberations. That was also true in the present case. We concluded:

5

> After considering the evidence in question, we are aware that the photographs depict the brutality and viciousness of the crimes committed. However, we do not believe that they would have aroused the jurors' passions any more than other evidence of Gollehon's conduct. As we stated in State v. Doll (1985), 214 Mont. 390, 400, 692 P.2d 473, 478, "[w]e will not demand that a trial be sanitized to the point that important and probative evidence must be excluded." We, therefore, hold that the District Court did not abuse its discretion when it admitted the autopsy photographs into evidence.

Gollehon, 864 P.2d at 1263.

In this case, a juror fainted while the autopsy photographs were being displayed. The defense moved for a mistrial. Close argues that this distinguishes this case from Gollehon. We conclude that, while it may add a different twist, it does not require a different result under the circumstances here presented.

After the juror fainted, she was assisted from the jury box by two of the State's witnesses, without verbal communication. The court immediately asked the other jurors to return to the jury room. When the juror was revived, she was taken into the judge's chambers, where she told the judge and counsel for both parties that she had fainted without forewarning, probably because of the autopsy photos. Although she was willing to continue on the case, the court removed her from the jury and an alternate was substituted. When trial resumed the following morning, the court instructed the jury as follows:

> During the course of this trial, there has been reason for the Court to replace one of the jurors with an alternate. That procedure, or the reason therefor, should not play any part in your deliberations regarding this case. If any of you feel that you cannot fairly and impartially take part in deliberations because of the replacement of the juror, or the reason therefor, please

6

let the Court know at the next available break in the trial.

The defendant did not object to this instruction, and no juror contacted the court in response to it.

This Court has affirmed the use of alternate jurors to avoid a mistrial where no prejudice has been shown to a defendant from juror conduct. State v. Pease (1986), 222 Mont. 455, 724 P.2d 153; State v. Baugh (1977), 174 Mont. 456, 571 P.2d 779. Here, Close has not shown prejudice to his case as a result of the juror's fainting while viewing the autopsy photographs. The juror who fainted and was assisted by the State's witnesses was removed from the case. The involvement of the other jurors in this event was de minimus. The court offered, but none of them found necessary, the opportunity to disqualify themselves because of it.

We hold that the District Court acted within its discretion in admitting the autopsy photographs into evidence.

ISSUE 3

Did the court err in denying Close's motion to dismiss on the ground that the State failed to preserve evidence?

Close argues that the State violated his due process rights by failing to preserve exculpatory evidence--his clothing which was turned in immediately after the riot. He contends that the absence of bloodstain on that clothing would support his defense.

In Gollehon, 864 P.2d at 1264-65, we held that the destruction of the prisoners' clothing after the September 1991 prison riot did not constitute a deliberate suppression of valuable exculpatory evidence, and that, therefore, no deprivation of the right to due

7

process occurred. Close argues that the incorrect standard was employed in Gollehon, and that the standard for preserving evidence, rather than the standard for gathering evidence, should have been used. He argues that even a negligent suppression of evidence is a denial of due process if the defense shows that the evidence was material, of substantial use, and exculpatory in that "it '[w]ould have tended to clear the accused of guilt, to vitiate a conviction,'" citing State, City of Bozeman v. Heth (1988), 230 Mont. 268, 272, 750 P.2d 103, 105.

Close has not shown that the clothing he turned in at the end of the riot was the clothing he wore throughout the riot. Further, an absence of bloodstain on the clothing would not establish that he did not enter cellblock D for the purpose of participating in the riot. He has not, therefore, shown that the clothing he turned in after the riot would be of substantial use and would have tended to clear him from guilt. We hold that the District Court did not err in denying Close's motion to dismiss for failure to preserve evidence.

Affirmed.

J. A. Turnage
Chief Justice

8

We concur:

_John Conway Harrison_
_____

_____

_____
                Justices

9

Justice James C. Nelson concurs.

I concur in the Court's opinion. I agree that in City of Helena v. Lewis (1993), 260 Mont. 421, 860 P.2d 698, we unequivocally held that, by reason of language of § 45-2-212, MCA, the defense of necessity is not available where the person asserting the defense acts in the reasonable belief that death or serious bodily injury will be inflicted on someone other than himself or herself. See also City of Missoula v. Asbury (1994), ___ Mont. ___, 873 P.2d 936, in accord.

I suggest, however, that the restrictive language in our statutory law and our interpretations of that law leave the criminal defendant without a legitimate and important affirmative defense that was traditionally recognized at common law and which may very well be his or her only defense under the facts of a given case. While a defendant can always argue that he or she did not have the requisite mental state to commit the crime charged, that defense, in my experience, is rarely persuasive and certainly does not impact the jury with the same significance or force as does a recognized affirmative defense.

Whether § 45-2-212, MCA, was written to be restrictive by accident or by design, I respectfully submit that the statute should be amended to include a legitimate third-party necessity, justification, compulsion, duress, or "choice of two evils" defense.

Justice

Justice Terry N. Trieweiler specially concurring.

I concur with Issues 2 and 3 of the majority opinion.

I specially concur with the result of Issue 1 of the majority's opinion, but disagree with the majority's reason for arriving at that result.

Specifically, I disagree that the common law defense of necessity is subsumed in and eliminated by the statutory defense of compulsion set forth at § 45-2-212, MCA. To the extent that *City of Helena v. Lewis* (1993), 260 Mont. 421, 860 P.2d 698, holds otherwise, I would reverse that decision.

In *State v. Ottwell* (1989), 240 Mont. 376, 784 P.2d 402, we recognized the common law defense of necessity and characterized it as follows:

> The necessity defense has also been characterized by situations in which the defendant faced a choice between two evils. In this type of case, defendants argued that they were justified in breaking the law to prevent a greater harm than the law was intended to cure. Thus, in one case, the defendants claimed necessity as a defense to charges of smuggling Laetrile into the United States to treat cancer patients. *United States v. Richardson* (9th Cir. 1978), 588 F.2d 1235, 1239, *cert. den.* 440 U.S. 947, 99 S.Ct. 1426, 59 L.Ed.2d 636. In another, a defendant who felt a moral obligation to frustrate United States military efforts in Southeast Asia claimed necessity as a defense to charges of burning Selective Service System records. *United States v. Simpson* (9th Cir. 1972), 460 F.2d 515, 517-18.

*Ottwell*, 784 P.2d at 403-04.

While *Ottwell* did not pertain to a situation where a law was broken to prevent harm to a third person, this Court did hold that the codification of the defense of compulsion did not preclude

11

retention of the defense of necessity under other circumstances. We retained the defense of necessity as it pertains to prisoners charged with escape. We held as follows:

> We conclude that the compulsion statute and necessity doctrine of *[State v.] Strandberg* [ (1986), 223 Mont. 132, 724 P.2d 710,] do not provide mutually exclusive defenses; they are complimentary. *Strandberg* is merely an application of the compulsion statute tailored to the circumstances of prison escapes. When dealing with prison escapes, therefore, *Strandberg* provides the appropriate analysis.

*Ottwell*, 784 P.2d at 405.

Likewise, I conclude that the compulsion statute and the common law doctrine of necessity, as it pertains to the defense of third persons, are not mutually exclusive and would retain that common law doctrine. For that reason, I disagree with the majority's conclusion under Issue 1.

However, in spite of my conclusion that the common law doctrine of necessity is a viable affirmative defense in Montana, I also conclude that the defense was inapplicable to the facts in this case.

The defense of necessity applies where someone violates the law to avoid the threat of harm to another. In this case, defendant was charged with burglary for knowingly entering and remaining in Cellblock D for the purpose of engaging in a riot. However, defendant denied that he entered Cellblock D for the purpose of engaging in a riot. His contention is that he entered Cellblock D only for the purpose of protecting an inmate who resided there. Therefore, by his own testimony, he did not violate

12

the law to avoid the threat of harm to another, and the defense of necessity was not applicable in this case. For these reasons, I would affirm the District Court's refusal to give defendant's proposed instructions on the defense of necessity.

_____
Justice

13

September 15, 1994

CERTIFICATE OF SERVICE

I hereby certify that the following certified order was sent by United States mail, prepaid, to the following named:


Gregory A. Jackson, Esq.
Jackson & Rice
833 No. Last Chance Gulch
Helena, MT 59601

William F. Hooks
Appellate Defender
Capitol Station, P. O. Box 200145
Helena, MT 59620-0145

Hon. Joseph P. Mazurek, Attorney General
Joseph E. Thaggard and Barbara C. Harris, Assistants
Justice Bldg.
Helena, MT 59620

Christopher Miller
County Attorney
Powell County Courthouse
Deer Lodge, MT 59722

ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY:_____
Deputy