No. 95-054

IN THE SUPREME COURT OF THE STATE OF MONTANA

1995

STATE OF MONTANA,

  Plaintiff and Respondent,

v.

BILLY DALE WILLIAMS,

  Defendant and Appellant.

FILED

OCT 25 1995

*Ed Smith*

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM: District Court of the Sixteenth Judicial District,
      In and for the County of Powder River,
      The Honorable Kenneth R. Wilson, Judge presiding.


COUNSEL OF RECORD:

  For Appellant:

    J. B. Wheatcroft, Attorney at Law,
    Miles City, Montana

  For Respondent:

    Hon. Joseph P. Mazurek, Attorney General,
    Brenda Nordlund, Assistant Attorney General,
    Helena, Montana

    Coleen Magera, Powder River County Attorney,
    Broadus, Montana


         Submitted on Briefs: August 17, 1995

             Decided: October 25, 1995

Filed:

_____
   Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

The defendant, Billy Dale Williams, was charged by complaint in the Justice Court of Powder River County with driving under the influence of alcohol in violation of § 61-8-401, MCA. On June 1, 1994, following a nonjury trial, Williams was convicted of the charge against him. He appealed his conviction to the District Court for the Sixteenth Judicial District in Powder River County. However, after his motion to suppress blood alcohol test results was denied, he entered a guilty plea on the condition that he be allowed to appeal the denial of his suppression motion.

We affirm the order of the District Court.

The issue on appeal is:

Did the District Court err when it denied Williams's motion to suppress his blood alcohol test results?

### FACTUAL BACKGROUND

On Saturday, October 16, 1993, at approximately 11 p.m., Billy Dale Williams was involved in a single vehicle accident in Powder River County. Powder River County Undersheriff Brett Tabolt and Deputy Sheriff Dave Lancaster arrived at the scene ten minutes after the accident was reported and discovered Williams's car in the ditch. Williams was seated in the passenger seat of the vehicle.

In an effort to determine the extent of Williams's injuries, Tabolt spoke with him at the accident scene. He observed that Williams's eyes were red and watery and "could smell an odor of an

2

alcoholic beverage on his breath." During the course of their conversation, and on several other occasions, Tabolt asked Williams to extinguish his cigarette and admonished him not to light another one. Several of these requests were unheeded.

After he spoke with Williams, Tabolt requested assistance from the Montana Highway Patrol. In response to that request, Patrolman Paul Hazelton arrived at the accident scene. Tabolt reported his observations to Hazelton, "including the observation of the odor of an alcoholic beverage."

By the time Hazelton arrived at the scene of the accident, Williams had already been transported by ambulance to the Miles City Holy Rosary Hospital. Hazelton radioed the Miles City Police Department and requested that an officer be dispatched to inform Williams of the Montana implied consent law and to obtain a blood sample. Hazelton concluded his investigation and left the accident scene at 12:55 a.m.

On Sunday October 17, 1993, at approximately 12:50 a.m., Officer Kevin Krausz of the Miles City Police Department arrived at the Holy Rosary Hospital and met with Williams. Krausz identified himself and told Williams that he was acting at the request of Officer Paul Hazelton of the Montana Highway Patrol. During his conversation with Williams, Krausz "did detect alcohol on [Williams's] breath." Krausz read the implied consent form to Williams, and Williams consented to a blood alcohol content (BAC)

3

test. A registered nurse in the hospital emergency room drew the blood sample.

Hazelton arrived at Holy Rosary Hospital at 1:50 a.m. and interviewed Williams. At that time, Hazelton also "could smell an odor of an alcoholic beverage coming from Mr. Williams's breath." Williams admitted that he had consumed three to four beers prior to his accident. Hazelton issued Williams notices to appear for driving under the influence of alcohol and for failure to wear a seatbelt, and signed the request for blood test form.

At 3 a.m., Hazelton went to the Miles City Police Department, where he signed the implied consent law advisory form as the arresting officer and collected Williams's blood sample from Krausz. Test results indicated that two hours after his accident, Williams's blood alcohol level was .09 mg./100 ml. blood.

Prior to his trial before the Powder River County Justice Court, Williams filed a motion to suppress the results of his blood alcohol test. In his supporting brief, Williams contended that Hazelton and Krausz had not complied with the implied consent procedures as set forth in § 61-8-402, MCA, and that the BAC sample was, therefore, improperly obtained. Specifically, Williams argued that Krausz had not had jurisdiction over the matter because the accident had not occurred within the city limits of Miles City or within five miles thereof, and that there was not probable cause to make a warrantless arrest. These two errors, Williams asserted, violated Montana's implied consent law.

4

That motion was denied, and the court found Williams guilty as charged on June 1, 1994.

Williams appealed his conviction to the Sixteenth Judicial District Court where all issues raised by the charge against him were considered *de novo*. Williams renewed his motion to suppress, based on the same two issues of jurisdiction and probable cause. The District Court found that there had been probable cause and authority to arrest Williams and to administer the BAC test pursuant to the implied consent law, and denied the motion. The court accepted Williams's conditional guilty plea, and stayed imposition of sentence pending Williams's appeal to this Court.

## DISCUSSION

Did the District Court err when it denied Williams's motion to suppress his blood alcohol test results?

The standard of review for a district court's denial of a motion to suppress is whether the court's findings of fact are clearly erroneous, and whether those findings were correctly applied as a matter of law. *State v. Flack* (1993), 260 Mont. 181, 188, 860 P.2d 89, 94. In this case, the parties submitted stipulated facts to the District Court. Therefore, our review is plenary and we must determine only whether the court's conclusions of law were correct as a matter of law. *Flack*, 860 P.2d at 92.

Williams contends that the District Court's denial of his motion to suppress was erroneous for three reasons. First, he claims that the BAC results should have been suppressed because he

5

to the District Court, Williams had not placed his arrest at issue, and the District Court did not address that question when it denied Williams's motion. Williams's failure to include this issue as a basis for his motion to suppress before the District Court bars him from raising it on appeal. *State v. Redfern* (1987), 228 Mont. 311, 313, 741 P.2d 1339, 1340-41. *See also* § 46-20-104(2), MCA.

LACK OF PROBABLE CAUSE

Williams claims that Krausz did not have probable cause to arrest him for purposes of the implied consent law, § 61-8-402(1), MCA. Montana's implied consent law provides, in pertinent part:

> A person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent . . . to a test or tests of the person's blood, breath, or urine for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person's body <u>if arrested by a peace officer</u> for driving or for being in actual physical control of a vehicle while under the influence of alcohol, drugs, or a combination of the two.

Section 61-8-402(1), MCA (emphasis added).

The implied consent law requires an arrest by a peace officer before its provisions become operative. Section 46-6-311(1), MCA, provides:

> A peace officer may arrest a person when a warrant has not been issued if the officer has probable cause to believe that the person is committing an offense or that the person has committed an offense and existing circumstances require immediate arrest.

We have long held that the probable cause requirement is satisfied:

> [I]f at the time of arrest the facts and circumstances within the officer's personal knowledge, or upon

7

> information imparted to him by a reliable source, are sufficient to warrant a reasonable person to believe that the suspect has committed an offense.

*Santee v. State* (1994), 267 Mont. 304, 307, 883 P.d 829, 831 (citing *Jess v. State* (1992), 255 Mont. 254, 261, 841 P.2d 1137, 1141).

Williams contends that the chain of sources, from Officers Tabolt and Lancaster to Officer Hazelton to the Miles City dispatch office to Officer Krausz, was too indirect to establish the requisite probable cause. Based on our prior decisions, we disagree. It is well established that an arresting officer may rely on information conveyed by another officer to determine whether there is probable cause to arrest. *Boland v. State* (1990), 242 Mont. 520, 524, 792 P.2d 1, 3. In fact, it is our policy that courts should evaluate probable cause "on the basis of the collective information of the police rather than that of only the officer who performs the act of arresting." *Boland*, 792 P.2d at 3.

In this case, the observations of Tabolt and Hazelton which had been communicated to Krausz, in combination with Krausz's own observations, established sufficient probable cause to arrest Williams. Tabolt personally observed Williams, who was seated in a wrecked vehicle in a ditch by the side of the highway. Tabolt further observed that Williams had red watery eyes, and that his breath had the odor of an alcoholic beverage. Tabolt reported that he repeatedly had to admonish Williams not to light a cigarette. Tabolt reported his observations to Hazelton, who in turn conveyed them to Krausz via the Miles City dispatcher. Prior to arresting

8

Williams, Krausz personally confirmed that Williams had been drinking when he "[detected] alcohol on Mr. Williams's breath."

We conclude that Krausz had probable cause to arrest Williams because he obtained information that Williams had been drinking through a chain of reliable sources, and because he personally observed the odor of an alcoholic beverage from Williams's breath during his conversation with Williams at the hospital. We hold that Krausz had sufficient evidence to warrant a reasonable person to believe that Williams had been driving while under the influence of alcohol.

## LACK OF JURISDICTION

Williams asserts that Krausz did not have jurisdiction to arrest him because his accident did not occur within the Miles City city limits or within five miles thereof, as required by § 7-32-4301, MCA. However, we hold that § 7-32-4301, MCA, is not determinative of Krausz's authority because he was acting at the request of, and based on the authority of Paul Hazelton of the Montana Highway Patrol.

Section 44-11-101, MCA, provides:

A peace officer or any law enforcement entity of any county or municipality or a state government law enforcement entity may request the assistance of a peace officer from another law enforcement entity within the state of Montana. <u>A peace officer, while in the jurisdiction of the requesting officer or entity and while on such request for assistance, has the same powers, duties, rights, privileges, and immunities as a peace officer of the requesting entity and is under the authority of the requesting officer or entity.</u>

(Emphasis added.)

9

Hazelton's call to the Miles City Police dispatcher was a request for assistance pursuant § 44-11-101, MCA. Krausz responded to the request, identified himself to Williams, and explained that he was acting on behalf of the Montana Highway Patrol. Since Hazelton had jurisdiction over Williams's accident pursuant to § 44-1-1003, MCA, he had the statutory authority to request Krausz's assistance. Therefore, we conclude that Krausz had jurisdiction to arrest Williams pursuant to § 44-11-101, MCA.

We affirm the District Court and hold that the court's denial of Williams's motion to suppress was correct as a matter of law.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

10