JUSTICE GRAY
delivered the Opinion of the Court.
The State of Montana (State) appeals from the order of the Eighteenth Judicial District Court, Gallatin County, suppressing blood alcohol evidence obtained from Gregory S. Stueck (Greg). We affirm.
The dispositive issue on appeal is whether the District Court erred in concluding that Montana’s implied consent statute applies to a *40 negligent vehicular assault prosecution so as to preclude the admissibility of blood sample evidence forcibly drawn after Greg refused to submit to a blood alcohol test.
Shortly before midnight on January 19, 1995, Montana Highway Patrol Officer Joseph Campbell (Campbell) was traveling east on Interstate 90 near Belgrade, Montana. He observed what appeared to be a large cloud of either smoke or steam developing approximately three-quarters of a mile ahead of him in the westbound lanes of traffic. As he approached the scene, Campbell saw a vehicle emerge from the cloud; the vehicle itself was trailing a huge cloud of steam and traveling west toward the Belgrade interchange. It appeared to Campbell that an accident had just occurred.
As Campbell approached the accident site, he saw a pickup truck in the median, a man staggering near the pickup and debris from the accident littering the median and the highway. The dazed man, Eric W. Troth (Troth), was the driver of the disabled pickup in the median; he had sustained a substantial bump on the back of his head. Campbell theorized that the vehicle he had seen emerge from the vaporous cloud was responsible for the accident. Observing a “fluid trail” heading west on the highway from the point of impact, Campbell put Troth in his patrol car and they began following the fluid trail toward the Belgrade interchange.
Campbell and Troth followed the fluid trail until it led them off the highway and down several local roads; it then tapered off to a point where Campbell was unable to detect its direction. With an injured man in his car and debris from the accident still littering the highway, Campbell decided that his best course of action was to return with Troth to the accident scene. He did so and immediately began clearing the highway and investigating the accident. After a wrecker arrived and lifted Troth’s pickup, Campbell detected a powder blue paint transfer on Troth’s dark-colored pickup which appeared to have been left by the vehicle responsible for the accident.
Officer Dennis DeLaittre (DeLaittre) responded to the accident scene five to ten minutes after Campbell and Troth’s return. DeLaittre began following the fluid trail down and off the highway and, eventually, to Amsterdam Road. DeLaittre could see where the vehicle leaving the fluid trail had made a right turn off of Amsterdam Road onto Thorpe Road. The fluid trail became more infrequent, often was in the wrong lane and ultimately consisted of an accumulation of fluids deposited from the vehicle after it either hit a bump or braked *41 for a comer. About that time, Campbell radioed DeLaittre that a baby blue paint transfer had been found on Troth’s pickup.
DeLaittre continued down Thorpe Road. When the road surface changed to gravel, he followed a single set of tire tracks visible in the early morning frost to where a vehicle appeared to have skidded on the roadway, backed up and pulled into a driveway. DeLaittre observed a “baby blue Ford pickup truck with extensive front-end damage on the driver’s side” in the driveway, and radioed Campbell that he had located the vehicle.
Campbell met DeLaittre at the driveway entrance to the residence on Thorpe Road where the baby blue Ford pickup was parked. Before approaching the house, the officers radioed the dispatch office for a registration check on the pickup. Dispatch called the registered owner, Don Stueck, who reported that his son Greg had been using the pickup; he also provided Greg’s telephone number.
The sheriff’s office telephoned Greg’s home in the early morning hours of January 20, 1995, and reached Greg’s wife, Kristy Stueck (Kristy). She was asked to go outside to talk to two officers who were parked in her yard. Kristy complied and Campbell and DeLaittre left their patrol cars and met her at the front door. After explaining to Kristy that an accident had occurred, the officers asked her if she had been driving or if Greg had been driving and if Greg had been drinking. When she answered that Greg had been driving the truck, they asked her to have Greg come to the door. Kristy responded that he was sleeping and she was unable to wake him. The officers returned to their patrol cars and, after Kristy’s second attempt to awaken him, Greg came to the door. According to Campbell, Greg motioned the officers to the house and eventually called them inside.
Campbell could smell the strong odor of alcohol on Greg at the outset of the interview and observed that Greg started “fumbling and trying to pull his boots on which took quite a bit of effort and concentration....” Greg initially told Campbell and DeLaittre that his friend “Bill” had been driving the pickup that night, but that he did not know Bill’s last name. Greg then left the house abruptly and walked outside to the truck to find his registration and proof of insurance; the officers followed. After further questioning, Greg admitted that he had been driving the truck and had fallen asleep at the wheel. When he felt the impact of the accident, Greg panicked and drove away from the scene.
Greg was arrested for three misdemeanor traffic violations, including negligent vehicular assault, and transported to Bozeman Deacon *42 ess Hospital. The officers did not advise Greg of the terms of the implied consent statute, but did request a blood sample to determine his blood alcohol content. When Greg refused to give a blood sample, it was taken from him forcibly.
The State charged Greg in Gallatin County Justice Court with negligent vehicular assault, failure to stop at the scene of an injury accident and failure to give immediate notice of an injury accident. Greg moved to suppress the evidence seized from his Ford pickup and his residence, as well as “[t]he blood sample forcibly withdrawn ... at Bozeman Deaconess Hospital,” and to dismiss the charges. Following a hearing, the Justice Court suppressed the evidence resulting from the forced blood drawing, but denied Greg’s motion to dismiss. The State appealed, and Greg cross-appealed, to the District Court.
The District Court granted Greg’s motion to suppress the blood sample evidence and denied the rest of his motions. The State appeals from the District Court’s suppression of the blood sample evidence.
Did the District Court err in concluding that Montana’s implied consent law applies to a negligent vehicular assault prosecution so as to preclude the admissibility of blood sample evidence forcibly drawn after Greg refused to submit to a blood alcohol test?
In granting Greg’s motion to suppress the blood sample evidence, the District Court rejected the State’s contention that State v. Thompson (1984), 207 Mont. 433,674P.2d 1094, rendered § 61-8-402, MCA, inapplicable to any offense other than driving under the influence of alcohol (DUI). The court distinguished Thompson, concluding that § 61-8-402, MCA, Montana’s implied consent statute, applies to the charge of negligent vehicular assault and, as a result, that the blood sample evidence is inadmissible because it was taken in violation of the statute. Where a district court grants a motion to suppress based on legal conclusions, we review those conclusions to determine whether they are correct. State v. Williams (1995), 273 Mont. 459, 462, 904 P.2d 1019, 1021 (citation omitted).
We begin our analysis by focusing on § 61-8-402, MCA, Montana’s implied consent statute. Section 61-8-402, MCA, provides, in pertinent part:
(1) A person who operates or is in actual physical control of a vehicle upon ways of this state open to the public is considered to have given consent, subject to the provisions of 61-8-401, to a test or tests of the person’s blood, breath, or urine for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person’s body if arrested by a peace officer for *43 driving or for being in actual physical control of a vehicle while under the influence of alcohol, drugs, or a combination of the two.
(3) If a driver under arrest refuses upon the request of a peace officer to submit to a test or tests designated by the arresting officer as provided in subsection (1), a test may not be given, but the officer shall, on behalf of the department, immediately seize the person’s driver’s license. ... [Emphasis added.]
In interpreting a statute, we look first to the language used therein by the legislature. State v. Gould (1995), 273 Mont. 207, 219,902 P.2d 532, 540. “Where the language is plain, unambiguous, direct, and certain, the statute speaks for itself ....” Gould, 902 P.2d at 540 (citation omitted).
According to the plain and unambiguous language used, § 61-8-402(1), MCA, applies when the defendant has been arrested for committing the DUI offense set forth in § 61-8-401, MCA. In such an event, a defendant’s refusal to submit to a blood alcohol test mandates that the test “may not be given.” Section 61-8-402(3), MCA. Moreover, blood samples drawn in violation of the implied consent statute are inadmissible as evidence in prosecutions for DUI. Thompson, 674 P.2d at 1095 (citing State v. Mangels (1975), 166 Mont. 190, 531 P.2d 1313).
Here, Greg was not arrested for violating § 61-8-401, MCA, the statute defining the offense of DUI. He was arrested, however, for committing the misdemeanor offense of negligent vehicular assault in violation of § 45-5-205, MCA. A person commits that offense if he or she (1) operates a vehicle in a negligent manner; and (2) is driving while under the influence of alcohol or drugs, “as provided for in 61-8-401(1)[;]” and (3) his or her conduct is the cause of bodily injury to another. Section 45-5-205(1), MCA. Thus, the DUI offense set forth in § 61-8-401, MCA, is a specific element of — and subsumed in — the negligent vehicular assault offense. As a result, it is clear that, in the language of § 61-8-402(1), MCA, Gregwas “arrested by a peace officer for driving or for being in actual physical control of a vehicle while under the influence of alcohol ....” Consequently, we conclude that § 61-8-402(3), MCA, prohibited the State from forcibly giving the blood test after Greg refused to submit to it and the blood sample evidence drawn in violation of the statute is inadmissible. Thompson, 674 P.2d at 1095.
*44 The State correctly points out that, in Thompson, we held § 61-8-402, MCA, inapplicable to a negligent homicide prosecution. It contends, therefore, that Thompson renders § 61-8-402, MCA, inapplicable to the negligent vehicular assault charge at issue here and does not preclude the admissibility of the blood sample taken without Greg’s consent. The State reads Thompson too broadly.
In Thompson, the defendant was charged with negligent homicide, which is statutorily defined as negligently causing the death of another human being. Section 45-5-104, MCA. He did not consent to the taking of a blood sample for purposes of determining the alcohol content in his blood; nonetheless, the sample was taken. The defendant moved for suppression of the blood sample on the basis that it had been drawn against his will in violation of § 61-8-402, MCA, and, therefore, was inadmissible. The district court refused to suppress the evidence, it was admitted at trial and the defendant was convicted of negligent homicide. Thompson, 674 P.2d at 1095. The issue before us on appeal was whether the prohibition against nonconsensual extractions of blood samples in § 61-8-402, MCA, applied to prosecutions for negligent homicide. If the prohibition applied, the blood sample drawn in violation of the statute was inadmissible and should have been suppressed. Thompson, 674 P.2d at 1095.
We ultimately concluded, based on three considerations, that § 61-8-402, MCA, did not apply to negligent homicide convictions. Thompson, 674 P.2d at 1096. First, and most importantly, we focused on the legislative intent as reflected in the language of the statute. Highlighting the “if arrested by a peace officer for DUI” language, we concluded that the protections afforded by the § 61-8-402, MCA, prohibition against nonconsensual blood drawings are “not engaged until there is an arrest for driving under the influence.” Thompson, 674 P.2d at 1096. Next, we reviewed decisions from other jurisdictions having implied consent laws similar to Montana’s and determined that “the better reasoned cases hold that the statute does not apply to negligent homicide cases.” Thompson, 674 P.2d at 1096-97 (citations omitted). Finally, we addressed the gravity of the charged offense and opined that, where a death had been caused by a drinking driver, a driver’s license suspension was an insufficient penalty for refusing to submit to a chemical analysis. Thompson, 674 P.2d at 1097.
Applying the three Thompson considerations to this case involving an arrest for negligent vehicular assault, rather than negligent homicide, mandates a different result and clearly indicates that Thompson is distinguishable. There, we began by applying the plain *45 meaning of the “arrest for DUI” language in § 61-8-402, MCA, to the negligent homicide charge at issue. Thompson, 674 P.2d at 1095-96. As noted above, the offense of negligent homicide is defined as negligently causing the death of another human being. See § 45-5-104, MCA. Nothing in that definition relates in any way to operating a vehicle while under the influence of alcohol. Accordingly, we properly concluded in Thompson that the legislature did not intend the protections afforded by § 61-8-402, MCA, to apply to an arrest for negligent homicide because the statutory language was inapplicable “until there is an arrest for driving under the influence.” Thompson, 674 P.2d at 1096. Here, as discussed above, the negligent vehicular assault charge includes, as a specific element, driving while under the influence of alcohol as set forth in § 61-8-401, MCA. See § 45-5-205(1), MCA. Thus here, unlike in Thompson, there has been an arrest for DUI and the protections afforded by § 61-8-402, MCA, are engaged.
Having concluded, under the statutory interpretation consideration which necessarily was our primary concern in Thompson, that § 61-8-402, MCA, applies to an arrest for negligent vehicular assault, the remaining Thompson criteria are of limited significance. With regard to the “other jurisdictions” consideration from Thompson, the State cites to State v. Woolery (Idaho 1989), 775 P.2d 1210, and State v. Armenia (Or.App. 1985), 702 P.2d 1113, in support of its position that § 61-8-402, MCA, is not applicable to non-DUI offenses. Those cases are readily distinguishable from the case presently before us and, therefore, they do not support the State’s position here.
In Woolery, the Idaho Supreme Court’s primary focus was not whether the statute applied to the offense charged. Rather, the Idaho court focused on the absence of any statutory language prohibiting a nonconsensual blood test in the event a requested test was refused. Woolery, 775 R2d at 1214. The court ultimately determined that no statutory right to refuse had been created and, therefore, compliance — or lack thereof — with the implied consent statute was irrelevant to the admissibility of the blood test evidence so long as the constitutional requisites for a lawful search and seizure were met. Woolery, 775 P.2d at 1214-15. Woolery has no application here where § 61-8-402(3), MCA, expressly provides that a test may not be given if it has been refused and, as a result, our cases hold that a nonconsensual drawing of blood following a § 61-8-402, MCA, refusal to submit to the test renders the blood test evidence inadmissible. See, e.g., Thompson, 674 P.2d at 1095.
*46 In Armenta, the defendant was charged with DUI and assault II following an accident which resulted in injuries. Armenta, 702 P.2d at 1113. The trial court suppressed blood test evidence in connection with both charges as a consequence of an invalid consent under the implied consent statute, and the state appealed only the inadmissibility of the evidence vis-a-vis the assault charge. Armenta, 702 P.2d at 1114. The Oregon Court of Appeals applied the statutory language specifically rendering the statute inapplicable to non-DUI offenses, and concluded that the blood test was admissible as to the assault charge assuming compliance with constitutional requirements. Armenta, 702 P.2d at 1114. Thus Armenta, like Thompson, limited the applicability of the implied consent statute to a DUI charge. Like Thompson, and for the reasons set forth above, Armenta is distinguishable from the present case involving an arrest for the offense of negligent vehicular assault, which includes DUI as a specific element, and which, therefore, constitutes an arrest for DUI pursuant to § 61-8-402(1), MCA.
The final Thompson consideration was the gravity of the charged offense and we observed, in that regard, that the negligent homicide offense at issue involved the death of a human being. Thompson, 674 P.2d at 1097. Indeed, negligent homicide is a felony offense punishable by imprisonment in the state prison for up to ten years and a fine of up to $50,000, or both. See §§ 45-2-101(22) and 45-5-104(3), MCA. In the case presently before us, however, negligent vehicular assault is a misdemeanor offense with maximum punishments of one year imprisonment in the county j ail and a fine of $ 1,000, or both. See §§ 45-2-101(41) and 45-5-205(2), MCA. Thus, while we agree with the State that this consideration is of very limited significance in light of the paramount importance of statutory interpretation in this case, its application here further distinguishes Thompson and weighs in favor of our conclusion that § 61-8-402, MCA, applies to an arrest for negligent vehicular assault.
We hold that the District Court did not err in concluding that § 61-8-402, MCA, applies to a negligent vehicular assault prosecution so as to preclude the admissibility of blood sample evidence drawn in violation of the statute and also did not err in suppressing that evidence.
Affirmed.
*47 JUSTICES NELSON, HUNT, TRIEWEILER and LEAPHART concur.