State v. Stueck
Decided Jan. 22, 1998
(NOT TO BE CITED AS AUTHORITY)

No. 97-279

IN THE SUPREME COURT OF THE STATE OF MONTANA

1998 MT 9N

STATE OF MONTANA,

Plaintiff and Respondent,

v.

GREGORY SCOTT STUECK,

Defendant and Appellant.

APPEAL FROM:   District Court of the Eighteenth Judicial District,

In and for the County of Gallatin,

The Honorable Thomas A. Olson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Karl P. Seel, Attorney at Law, Bozeman, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; C. Mark

Fowler, Assistant Attorney General, Helena, Montana

Marty Lambert, Gallatin County Attorney; Jane

Mersen, Deputy Gallatin County Attorney, Bozeman,

Montana

Submitted on Briefs: December 4, 1997

Decided: January 22, 1998

JUSTICE LEAPHART delivered the Opinion of the Court.

¶1   Pursuant to Section I, Paragraph 3(c), Montana Supreme Court
1996 Internal Operating Rules, the following decision shall not be
cited as precedent but shall be filed as a public document with the
Clerk of the Supreme Court and shall be reported by case title,
Supreme Court cause number, and result to the State Reporter
Publishing Company and to West Group in the quarterly table of
noncitable cases issued by this Court.

¶2   Gregory Scott Stueck (Stueck) appeals from the decision of the
Eighteenth Judicial District Court, Gallatin County, denying
several motions to suppress and motions to dismiss, and convicting
him of three misdemeanor offenses:  failure to stop at the scene of
an accident in violation of Sec. 61-7-103, MCA; failure to give
immediate notice of accident in violation of Sec. 61-7-108, MCA;
and negligent vehicular assault in violation of Sec. 45-5-205, MCA.
We affirm.
Factual and Procedural Background

¶3   This Court previously reviewed this matter when the State of
Montana (State) appealed from the decision of the District Court
granting Stueck's motion to suppress evidence of Stueck's blood
alcohol concentration (BAC). See State v. Stueck (1996), 280 Mont.
38, 929 P.2d 829 (hereinafter Stueck I).  In Stueck I, this Court
held that because Stueck was charged with negligent vehicular
assault, which statutorily encompasses the offense of driving under
the influence, the State's failure to inform Stueck of his rights
under the implied consent law resulted in an illegally obtained

blood sample which should be suppressed at trial. Thereafter, the matter proceeded to trial and the jury found Stueck guilty of the three charged misdemeanor offenses. Stueck appeals the District Court's decision denying his motion to suppress evidence resulting from his arrest, denying his motion to dismiss for lack of speedy trial, denying the defense of primary proof of a confession by Kristi Stueck (Kristi), allowing the State to present new evidence during rebuttal argument, denying Stueck's motion for directed verdict, denying Stueck's motion to dismiss based on destruction of the evidence, allowing the State to improperly impeach a witness with the Justice Court transcript, and cumulative error. We set forth a thorough recitation of the facts at Stueck I; however, we review the facts in the context of Stueck's current appeal.

¶4 Slightly before midnight on January 19, 1995, Eric Troth (Troth) was driving west on Interstate 90 from Bozeman to Belgrade. He was traveling at approximately 55 mph when, about one mile short of the Belgrade exit, he was rear-ended by another vehicle. Testimony at trial indicated that Troth smashed the rear window of his truck with the back of his head and suffered other minor injuries when his truck spun on the highway and rolled into the median.

¶5 At about the same time, Highway Patrol Officer Joseph Campbell (Officer Campbell) was proceeding east on Interstate 90 toward Bozeman. Officer Campbell testified that it was a cold, clear night and he had just passed the Belgrade interchange when he saw a big white cloud covering both lanes of traffic in the distance. As he approached, Officer Campbell noticed headlights coming toward him and could see that the vehicle, an older model pickup, was emitting a cloud of steam or smoke. As the big cloud dissipated, Officer Campbell noticed faint taillights in the median. When he got closer, he could see Troth's small truck in the median and debris covering the highway. He stopped at the accident scene and saw Troth who was stumbling and appeared disoriented as he approached Officer Campbell's patrol car. After talking with Troth for a few minutes, Officer Campbell realized that Troth's vehicle must have been hit by the pickup he had seen driving toward

Belgrade. Officer Campbell told Troth to get in the patrol car and they began following what appeared to be a fluid trail left by the pickup. The trail led to the Belgrade interchange, made a left turn at Jackrabbit Lane, and a right turn onto Amsterdam Road, then started to fade. Officer Campbell drove around the area for a short time, but decided to return to the accident scene to clean the debris from the highway and begin his investigation. At this time, Officer Dennis DeLaittre (Officer DeLaittre) radioed that he was in the area and headed toward the accident scene.

¶6 In an attempt to find the driver of the pickup, Officer DeLaittre followed the fluid trail while Officer Campbell cleared the highway and investigated the scene of the accident. Officer DeLaittre was able to follow the trail on Amsterdam Road, then onto Thorpe Road and eventually to Stueck's home on Thorpe Road where a light blue pickup truck sat in the driveway. By shining his spotlight on the area, Officer DeLaittre could see the license plate on the truck and front-end damage which appeared to be fresh compared to other dirt on the vehicle. Officer DeLaittre radioed Officer Campbell to meet him at Stueck's home and radioed the station to get information on the registration of the pickup. A search of the registration revealed that Don Stueck was the registered owner of the pickup. The dispatch operator called Don Stueck who indicated that his son Greg had borrowed the pickup. Officers Campbell and DeLaittre requested that the dispatch operator call Stueck's home and awaken the occupants for questioning.

¶7 At approximately 1:00 a.m., Kristi answered the phone and was informed that highway patrol officers were waiting outside. Kristi went to the door and the officers informed her that they were investigating a hit-and-run accident and wanted to talk to the driver of the pickup. Kristi appeared surprised and concerned about the "hit" driver who had been injured and indicated that her husband had been driving earlier when he went to work out. The officers then asked to speak to Stueck. Kristi made two attempts to wake Stueck. The officers indicated that if she was not able to wake him, they would return with a warrant.

¶8   The officers were waiting near their patrol cars when Stueck finally appeared at the door.  Both officers testified that Stueck waved to them to come toward the door.  Kristi and Stueck claim that they did not invite the officers in, but both officers recall that Stueck motioned for them to enter the house.  While standing in the foyer of the Stuecks' home, the officers asked Stueck who had been driving that night.  Stueck indicated that his friend "Bill" was driving, but that he did not know Bill's last name or where Bill lived.  The officers asked if the pickup was registered and insured, Stueck indicated that it was and began putting his shoes on in an attempt to go to the truck to retrieve the registration and proof of insurance.

¶9   The officers testified that Stueck appeared intoxicated, had a great deal of trouble putting his shoes on, slurred his words and had a short attention span.  The officers further testified that as they were asking questions, Stueck succeeded in putting his shoes on, then suddenly bolted out the door toward the pickup.  Officer Campbell caught up with Stueck as he reached the driver's side of the pickup.  Upon further questioning by Officer Campbell about who was driving the pickup, Stueck admitted that he was driving, explained that he must have fallen asleep on the highway and that he woke up upon feeling the impact of the accident.  He further explained that he panicked so he did not stop, but just continued home.  Officer Campbell was placing Stueck under arrest as Officer DeLaittre approached.  At this time, Kristi was in the house finding an inhaler for Stueck.  When she returned, Stueck was under arrest.  Stueck was given Miranda warnings and asserted his right to an attorney.  Officer Campbell transported Stueck to the hospital where a blood sample was forcibly drawn, then to the police station for booking.  Officer DeLaittre stayed behind with the pickup which was impounded that night.

¶10  The next morning Officers Campbell and DeLaittre applied for and received a warrant to search the pickup.  They conducted the search at the impound lot.  They found that the truck was full of

gear to the point that there was only room for one individual in the cab of the pickup. They also found remnants of blue plastic attached to the front bumper of the pickup, the remnants matched blue plastic bag that Troth had in the back of his truck.

¶11 Stueck was charged with three misdemeanor offenses: failure to stop at the scene of an accident in violation of Sec. 61-7-103, MCA; failure to give immediate notice of accident in violation of Sec. 61-7-108, MCA; and negligent vehicular assault in violation of Sec. 45-5-205, MCA.

¶12 On February 14, 1996, Kristi wrote a letter to the State indicating that she was driving the pickup on the evening of the accident. The State subpoenaed Kristi for questioning but she asserted her Fifth Amendment right against self-incrimination. The State continued to pursue its charges against Stueck.

¶13 At the Justice Court level, Stueck moved to suppress certain evidence including the BAC evidence. The Justice Court held a hearing on May 17, 1995 and subsequently granted the motion. The State appealed the decision to the District Court and Stueck cross-appealed. The District Court held a hearing on November 22, 1995 and granted the motion to suppress the BAC evidence. The State appealed the decision of the District Court to this Court. We affirmed at Stueck I. The case finally proceeded to trial on March 24-25, 1997 (over two years after Stueck's arrest) and the jury found Stueck guilty of the three misdemeanor offenses. Stueck presents eight issues for appeal; we restate them as follows:

¶14  1) Did the District Court err in denying Stueck's motion to suppress evidence resulting from: a) an illegal nighttime arrest in violation of Sec. 46-6-105, MCA, the Fourth Amendment of the United States Constitution and Article II, Section 10 of the Montana Constitution; b) the officers' warrantless entry onto Stueck's property; and c) violation of Stueck's Miranda rights?

¶15  2) Did the District Court err in denying Stueck's motion to dismiss based on denial of a speedy trial in violation of Sec. 46-13-401(2), MCA, and Article II, Section 24 of the Montana Constitution?

¶16  3) Did the District Court abuse its discretion by preventing the jury from reviewing Kristi's confession letter during deliberations?

¶17  4) Did the District Court err in allowing the State to offer new evidence during its rebuttal argument?

¶18  5) Did the District Court err in denying Stueck's motion for directed verdict?

¶19  6) Did the District Court err in denying Stueck's motion to dismiss based on destruction of the evidence?

¶20  7) Did the District Court err in allowing the State to impeach Kristi with the use of the Justice Court transcript?

¶21  8) Did the cumulative errors in this case prevent Stueck from obtaining a fair trial?
Discussion
Issue 1

¶22  1) Did the District Court err in denying Stueck's motion to suppress evidence resulting from: a) an illegal nighttime arrest in violation of Sec. 46-6-105, MCA, the Fourth Amendment of the United States Constitution and Article II, Section 10 of the Montana Constitution; b) the officers' warrantless entry into Stueck's property; and c) violation of Stueck's Miranda rights?

¶23  The standard of review of a district court's denial of a motion to suppress is whether the court's findings of fact were clearly erroneous, and whether those findings were correctly applied as a matter of law.  State v. Williams (1995), 273 Mont. 459, 462, 904 P.2d 1019, 1021.    Stueck asserts that the District Court erred in denying his motion to suppress evidence on three grounds.  His first argument is that the State, in violation of Sec. 46-6-105, MCA, and his constitutional right of privacy, arrested him at night for misdemeanor offenses that occurred at another time and place.

¶24  Section 46-6-105, MCA, provides in pertinent part that "[a]n arrest may be made at any time of the day or night, except that a person may not be arrested in the person's home or private dwelling place at night for a misdemeanor committed at some other time and place unless upon the direction of a judge endorsed upon an arrest warrant."  The State argues that because the actual taking into custody of Stueck occurred in his driveway, the actions of the officers did not violate Stueck's right of privacy and did not violate the statute.  We disagree.

¶25  In another case involving an alleged violation of Sec. 46-6-105, MCA, State v. Ellinger (1986), 223 Mont. 349, 725 P.2d 1201, Undersheriff Fisher was investigating a citizen report that a truck was being driven in a reckless manner and that the driver appeared intoxicated.  The eyewitness provided a description of the vehicle and the license plate number.  Undersheriff Fisher went to Ellinger's house and found the truck parked in the driveway.  Ellinger then stepped out of his house and leaned against the doorway.  Undersheriff Fisher asked Ellinger to perform two field sobriety tests.  Ellinger failed the tests and Undersheriff Fisher arrested Ellinger on the walkway for driving under the influence.  Ellinger claimed he was arrested in violation of Sec. 46-6-105, MCA.  We compared Ellinger's facts to those presented in Welsh v. Wisconsin (1984), 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732, and focused on three key points: "First, Undersheriff Fisher never

entered defendant's house. . . . Second, . . . the time of arrest was . . . 7:34 p.m. . . . [which] [w]hen viewed in a light most favorable to defendant . . . might be considered twilight, but certainly not 'night.' . . . Third, . . . defendant Ellinger was arrested for the criminal offense of driving while under the influence of alcohol." Ellinger, 725 P.2d at 1203-04. In evaluating the totality of the circumstances, we concluded that because Ellinger's arrest for a criminal offense did not occur in his house or at night, Sec. 46-6-105, MCA, and Ellinger's corresponding expectation of privacy were not violated. Ellinger, 725 P.2d at 1204.

¶26 Despite the fact that Stueck's actual arrest occurred in his driveway, we conclude that the totality of the circumstances surrounding his arrest violated Sec. 46-6-105, MCA, and Stueck's corresponding right of privacy. The investigative techniques employed by Officers Campbell and DeLaittre violate Montana statutory prohibitions and do not withstand constitutional muster. The prohibitory language of Sec. 46-6-105, MCA, restricting officers from arresting persons in their homes at night, was meant to prevent the interrogation of individuals in the privacy of their homes that occurred in this case. See Commission Comments to Sec. 46-6-105, MCA (stating that "[t]his restriction was imposed to prevent the police from harassing a person or searching his home on the pretext of arresting him for a misdemeanor committed at some other time and place. Allowing the police to arrest for a misdemeanor at night can be an effective law enforcement tool provided it is not used as a sham to torment a citizen in his home").

¶27 Officers Campbell and DeLaittre stated that they did not, at any time, intend to charge Stueck with an offense other than the misdemeanors of which he was eventually found guilty. Moreover, it is not disputed that 1:00 a.m. is nighttime, or that the officers were pursuing Stueck for an offense committed earlier that night and at another location. Therefore, the officers' actions of requesting that the dispatch operator call and awaken the occupants of the home at 1:00 a.m. in order to speak with the officers

waiting in the driveway went beyond permissible investigatory techniques. Furthermore, the officers' insisting that Kristi awaken Stueck and eventually threatening to get a warrant in order to gain access to the Stueck home could be characterized as harassing. Finally, the officers' luring of Stueck into the driveway by requesting the vehicle registration and proof of insurance violates the spirit of Sec. 46-6-105, MCA.

¶28 Despite the unlawful nature of the officers' arrest of Stueck at his home at night for the misdemeanor offenses which were committed at some other time and place, the relief which Stueck requests, suppression of evidence, does not fit the facts of this case. In City of Billings v. Whalen (1990), 242 Mont. 293, 790 P.2d 471, we determined that the arrest of Whalen while straddling the threshold of his home for the misdemeanor offense of cutting the corner on a left-hand turn, which upon further investigation led to a DUI charge, was an illegal arrest in violation of Sec. 46-6-105, MCA. We held that all evidence seized as a result of the illegal arrest should be suppressed. Whalen, 790 P.2d at 475. However, in the present case there are no "fruits of the poisonous tree" to suppress. The relevant evidence that the State used to convict Stueck at trial, including his admission to the crime, was obtained prior to the illegal arrest or obtained later with a warrant. In addition, the information used to obtain the warrant was information known to the officers prior to placing Stueck under arrest. Therefore, while the District Court erred in finding that the officers did not violate Sec. 46-6-105, MCA, and Stueck's corresponding right of privacy, we conclude that the District Court reached the proper result by denying the motion to suppress. "We affirm district court decisions which are correct regardless of the court's reasoning in reaching the decision." Clark v. Eagle Systems (1996), 279 Mont. 279, 286, 927 P.2d 995, 999.

¶29 Stueck next claims that the District Court erred in denying his motion to suppress unspecified physical evidence seized by the officers and statements made by Stueck and Kristi as a result of the officers' warrantless entry onto Stueck's private property. In support of his claim that the officers illegally entered his

property, Stueck asserts that his home is surrounded by a fence, and a stop sign appears at the entry to his driveway. Stueck claims that by taking these additional measures he intended to protect his privacy much like the individuals in State v. Bullock (1995), 272 Mont. 361, 901 P.2d 61. The State contends that in contrast to Bullock, "here the residents of the Stueck house took no steps to protect the area in front of their home, including the driveway area and the front door area of the house, from observation by passersby." Testimony at trial revealed that the driveway was not gated and that the officers did not notice a stop sign at the entry. Although Kristi testified that by hanging the stop sign the Stuecks intended to stop trespassers, most individuals faced with a stop sign would not interpret the sign as prohibiting trespassing. We conclude that the Bullock decision is distinguishable from this case and that the officers did not violate Stueck's right of privacy by entering the driveway. Furthermore, Stueck fails to specify any illegally obtained evidence that should be suppressed as a result of the officers' warrantless entry. Therefore, the District Court did not err in denying Stueck's motion to suppress based on the officers' warrantless entry onto the Stuecks' property.

¶30 Third, Stueck claims that the officers violated his Miranda rights and any evidence obtained as a result, including his confession, should be suppressed. This Court has adopted the United States Supreme Court's rule in Miranda v. Arizona (1966), 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694, "that states may not use confessions or admissions resulting from a 'custodial interrogation' unless the proper Miranda warnings have been given." State v. Rushton (1994), 264 Mont. 248, 255, 870 P.2d 1355, 1359 (citing Miranda, 384 U.S. at 444). Custodial interrogation is defined as " 'questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.' " Rushton, 870 P.2d at 1359 (quoting Miranda, 384 U.S. at 444). In addition, "[t]his Court has established guidelines for determining when a 'custodial interrogation' occurs. If a person has no free right to leave, either from the express or implied conduct of police officers, then the interrogation is custodial in nature." Rushton, 870 P.2d at

1360 (citing Ellinger, 725 P.2d at 1204).

¶31  Stueck claims that, considering the circumstances of his confession, "the only possible conclusion is that a person in Mr. Stueck's position would reasonably believe that his freedom was restricted."  We disagree.  In fact, as the State points out, Stueck did not answer many of the questions asked as he was concentrating too hard on putting his shoes on.  When he finally got the shoes on, he suddenly bolted out the door in search of the registration and proof of insurance requested by the officers.  Therefore, we conclude that the questioning of Stueck that eventually led to his confession was not custodial in nature and thus, Stueck's Miranda rights were not violated.

¶32  As a corollary matter to this first issue, Stueck's reply brief invited this Court to adopt a new standard of review for "warrantless activity."  Stueck suggests that this Court should review the issues de novo.  This argument is in response to the State's brief which asserts that this Court cannot review issues which involve credibility of witnesses or weight of the evidence in determining whether the district court properly denied a motion to suppress.  The State has thus moved to strike Stueck's argument claiming that it violates Rule 23(c), M.R.App.P., by raising new matters beyond the issues raised in the State's answer brief.  After allowing supplemental briefing by the State on this matter, we determine that the State's motion to strike should be denied.  We have reviewed the standard of review argument submitted by both parties and determine that Ornelas v. United States (1996), 517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911, cited by Stueck, is not controlling in this case.  The Ornelas decision sets a standard of review for determining probable cause or reasonable suspicion and allows the Supreme Court to review those determinations de novo.  Ornelas does not set forth the standard of review for determining whether or not the district court erred in denying a motion to suppress, the issue raised in this appeal.  As set forth above, this Court reviews a district court's denial of a motion to suppress by determining whether the court's findings of fact were clearly erroneous, and whether those findings were correctly

applied as a matter of law. Williams, 904 P.2d at 1021.
Issue 2

¶33  2) Did the District Court err in denying Stueck's motion to dismiss based on denial of a speedy trial in violation of Sec. 46-13-401(2), MCA, and Article II, Section 24 of the Montana Constitution?

¶34  Stueck argues that the State's unsuccessful appeals prevented him from receiving a speedy trial and thus denied his statutory and constitutional rights.  Stueck relies on Article II, Section 24 of the Montana Constitution and Sec. 46-13-401(2), MCA, to support his claim.  Section 46-13-401(2), MCA, states: "After the entry of a plea upon a misdemeanor charge, the court, unless good cause to the contrary is shown, shall order the prosecution to be dismissed, with prejudice, if a defendant whose trial has not been postponed upon the defendant's motion is not brought to trial within six months."  Both the State and Stueck agree that the trial did not begin until 794 days had passed after Stueck's arrest. Stueck argues simply that the period expired and requests that the charges against him be dismissed.  However, the State asserts that Stueck cannot establish that the delay in bringing him to trial was the State's fault.

¶35  The standard of review of a district court's denial of a motion to dismiss on speedy trial grounds is whether the court's interpretation of the law is correct.  State v. Foshee (Mont. 1997), 938 P.2d 601, 604.  The State argues, first, that Sec. 46-13-401(2), MCA, does not apply because the Justice Court action was exhausted within the prescribed six-month period.  In so arguing, the State relies on Bullock.  In Bullock, this Court held that so long as the justice court jurisdiction is exhausted by some action authorizing an appeal de novo to district court, the six-month requirement of Sec. 46-13-104(2), MCA, has been satisfied.  Bullock, 901 P.2d at 67. The State further asserts that once the State takes an appeal to the district court, this Court analyzes a speedy trial claim under

the four-part test set forth in Barker v. Wingo (1972), 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101, adopted by this Court in State ex rel. Briceno v. District Court (1977), 173 Mont. 516, 568 P.2d 162; see also Bullock, 901 P.2d at 67.  In determining whether a defendant has been denied a speedy trial, this Court considers: 1) length of delay; 2) reason for delay; 3) assertion of the right by defendant; and 4) prejudice to the defendant.  Briceno, 568 P.2d at 164.  While no single factor is determinative, the court weighs each facet of the analysis in light of the surrounding facts and circumstances.  State v. VanVoast (1991), 247 Mont. 194, 200, 805 P.2d 1380, 1384.

¶36  As a preliminary matter, the State concedes that the first Barker factor weighs in favor of Stueck's claim because the length of delay in this case, 794 days, is presumptively prejudicial.  Thus, the State has the burden of providing a reasonable explanation for the delay and showing that the defendant was not prejudiced by the delay.  VanVoast, 805 P.2d at 1384.  The State, however, argues that  the remaining factors of the Barker test weigh in its favor.  Much of the delay was caused by the State's interlocutory appeal to this Court regarding the District Court's suppression of the BAC evidence and is considered institutional delay.  In State v. Moore (1994), 268 Mont. 20, 885 P.2d 457, overruled on other grounds by State v. Gollehon (1993), 262 Mont. 293, 864 P.2d 1257, this Court reviewed a similar situation.  In Moore, the delay was one year and ten months (692 days) and was the result of the State's appeal to this Court.  We reasoned that:
If the issues raised by the government's interlocutory appeal

were "clearly tangential or frivolous," the delay should

be weighed heavily against the government.  However, when

the government's conduct is reasonable, and there has

been no showing of bad faith or dilatory purpose on the

part of the government, delays occasioned by the

government's interlocutory appeals should not weigh in

favor of a defendant's speedy trial claim.

Moore, 885 P.2d at 487 (citations omitted). The State in this case appealed the district court's suppression of the BAC evidence. The evidence was important to the State's case because the offense of negligent vehicular assault requires that the State show that Stueck was driving under the influence. Moreover, the interlocutory appeal resulted in a new rule of law requiring that the implied consent statute be applied to Sec. 45-5-205, MCA. Since the State's appeal was not made in bad faith or for a dilatory purpose, the resulting delay should not weigh heavily against the State.

¶37 Next, the State claims that Stueck showed a lack of interest in his speedy trial claim by waiting to file his motion to dismiss until three days before trial. In Briceno, we stated that " '[t]he "appropriate motion" is a motion to dismiss for denial of a speedy trial. The proper time to assert the right to a speedy trial is prior to the actual commencement of the trial, usually at the time the trial date is set, or the time the case is called to trial.' " Briceno, 568 P.2d at 165 (quoting State v. Steward (1975), 168 Mont. 385, 390, 543 P.2d 178, 182). However, since Briceno, this Court has set forth stricter standards for asserting a speedy trial claim. For example, the State directs the Court to its decision in State v. Williams-Rusch (1996), 279 Mont. 437, 451, 928 P.2d 169, 178. In Williams-Rusch, we held that by filing her motion to dismiss only one week prior to the commencement of trial, Williams-Rusch showed a lack of interest in her speedy trial rights. Additionally, in State v. Thompson, we concluded that when the defendant failed to object at the omnibus hearing, and did not request a speedier trial setting, the defendant's claim of prompt assertion of his speedy trial right was questionable and weak. State v. Thompson (1993), 263 Mont. 17, 32-33, 865 P.2d 1125, 1135.

¶38 The State claims that Stueck had several opportunities to object but did nothing until three days before trial. A review of

the record reveals that at the omnibus hearing held September 12, 1995, Stueck asserted his intention to make a formal written motion to dismiss for delay in prosecution. The record, however, is devoid of such a motion. In addition, Stueck filed a cross-appeal to each appeal filed by the State, did not object to the State's motion for continuance, and, in fact, Stueck filed his own motion for continuance on January 16, 1996. As a result, we conclude that the third-prong of the Barker test does not weigh in favor of Stueck's speedy trial claim.

¶39  Under the fourth Barker factor, the Court must determine the prejudice to Stueck as a result of the delay of prosecution. The Court analyzes three factors in determining prejudice from lack of speedy trial: 1) prevent oppressive pretrial incarceration; 2) minimize anxiety and concern of the accused; and 3) limit the possibility that the defense will be impaired. Barker, 407 U.S. at 532. First, the State asserts that Stueck was arrested on January 20, 1995, he was taken to Gallatin County Detention Center where he was booked and taken before the court the same day. The court released Stueck on bond. Therefore, Stueck has not suffered oppressive pretrial incarceration.

¶40  Next, this Court has recognized that "[a] certain amount of anxiety and concern is inherent in being accused of a criminal offense." State v. Marquardt (1990), 243 Mont. 133, 137, 793 P.2d 799, 801. Stueck, however, has not alleged suffering any anxiety and concern, let alone any unusual anxiety and concern that would evidence prejudice.

¶41 Finally, the crucial factor used in determining if the defendant has been prejudiced by the delay is whether the defense has been impaired. VanVoast, 805 P.2d at 1385. In determining whether the defense has been impaired, we consider whether witnesses essential to the defense have died, are not available to testify or have suffered memory loss, or whether other evidence essential to the defense has been lost. See VanVoast, 805 P.2d at 1385; Moore, 885 P.2d at 488. Stueck has made no allegations that

witnesses died or were otherwise not available. Kristi Stueck testified at trial that she could not recall all the events of the night of the accident nor could she recall her prior testimony at the Justice Court evidentiary hearing; however, review of the record does not reveal that the defense was impaired by Kristi's inability to recall some of the events. As to lost evidence, although, as will be discussed more thoroughly in regards to issue six, the physical evidence in this case was misplaced when the highway patrol office relocated, no evidence essential to the defense was lost, nor have any allegations to that effect been made in support of Stueck's speedy trial claim.

¶42 Having balanced the four Barker factors, we conclude that Stueck was not deprived of his constitutional right to a speedy trial and that the District Court did not err in denying Stueck's motion to dismiss for lack of speedy trial.
Issue 3

¶43 3) Did the District Court abuse its discretion by preventing the jury from reviewing Kristi's confession letter during deliberations?

¶44 Stueck's defense at trial was that Kristi was the driver of the pickup on the night of the accident. Kristi wrote a confession letter to the State to that effect. The letter was admitted into evidence as Exhibit 14 and at the conclusion of trial, Stueck sought to have the letter given to the jurors to review during deliberations. The District Court denied Stueck's request. Stueck claims on appeal that denying the jury of the hard copy of the letter to review during deliberations "underemphasize[d] this critical defense evidence."

¶45 Section 46-16-504, MCA, controls what items may be taken into the jury room. That section provides: "Upon retiring for deliberation, the jurors may take with them the written jury instructions read by the court, notes of the proceedings taken by

themselves, and all exhibits that have been received as evidence in the cause that in the opinion of the court will be necessary." Section 46-16-504, MCA (1995) (emphasis added). Thus, the district court has discretion to determine what exhibits will be necessary. This Court will not overturn a district court decision regarding the availability of evidence during deliberations absent an abuse of discretion by the district court. State v. Hage (1993), 258 Mont. 498, 503, 853 P.2d 1251, 1253; State v. Christenson (1991), 250 Mont. 351, 361, 820 P.2d 1303, 1309-10. The District Court concluded that allowing the jury to take the confession letter by Kristi "would over emphasize written word over the testimonial word." The record reveals that the confession letter was admitted into evidence and was discussed throughout Kristi's testimony. In addition, both parties mentioned the letter during closing arguments. The jury heard sufficient evidence regarding the confession letter and had ample opportunity to weigh that evidence in light of the other available evidence. Therefore, we hold that the District Court did not abuse its discretion in ruling that the confession letter would not be given to the jury during deliberations.

Issue 4

¶46  4) Did the District Court err in allowing the State to offer new evidence during its rebuttal argument?

¶47  Evidence presented at trial indicated that Kristi was at a bar with Stueck the evening of the accident, and Stueck argued in his defense that Kristi was driving when the accident occurred. In response, the State raised the following query during its rebuttal argument:

Where's the babysitter? You heard [Kristi] say she didn't want

the officers in the house because she had a two and a

three-year old there. You heard the officers testify

that there were no other adults in the house that they

saw. . . . [Kristi] [d]idn't say anything about taking a

babysitter home.  Were the two and three-year old there

all by themselves?  No.  She was there with them.  That's

more evidence that you have that shows her statement is

highly incredible.

¶48  Stueck argues that the District Court erred in allowing the State to mention the absence of a babysitter during its rebuttal argument and further erred in failing to instruct the jury not to consider that portion of the State's rebuttal argument. However, throughout this line of argument by the State, Stueck did not object.  The issue was only raised when the jury began its deliberations and inquired of the court: "Can anyone explain the absence of the babysitter, presumably Mrs. Stueck did come home with her husband.  If there were no other tracks in the roadway, explain how he or she got home!"  Stueck argues that the court should have instructed the jury that any reference to a babysitter in rebuttal should not have been considered.  Instead, the court brought the jurors back to the courtroom and instructed them that the question would not be answered because the record was closed, and the case must be decided on the state of the record.  In addition, the court called attention to the instruction which states that the jury is governed by the evidence introduced at trial and to the instruction that defines direct and circumstantial evidence.

¶49  The State's counter argument is two-fold.  It argues, first, that this Court should not consider Stueck's argument based on his failure to cite any legal authority in support of his argument.  In addition, the State argues that Stueck's failure to make a timely objection at trial precludes this Court from considering the alleged error.  In support, the State cites Sec. 46-20-104, MCA, which provides in part that "[f]ailure to make a timely objection during trial constitutes a waiver of the objection . . . ."  This

Court has held under the contemporaneous objection rule, Sec. 46-20-104, MCA, that it is precluded from considering an alleged error unless a timely objection was made at trial. State v. Rodgers (1993), 257 Mont. 413, 417-18 849 P.2d 1028, 1031. Stueck asserts that the State's argument regarding the babysitter should not have been considered by the jury; however, he failed to make a timely objection during the State's closing argument and waited until the issue was raised by the jury. Therefore, we conclude that Stueck's failure to object constitutes a waiver of his claim under Sec. 46-20-104, MCA, and hold that the District Court did not err in instructing the jury to decide the case on the state of the record.

Issue 5

¶50  5) Did the District Court err in denying Stueck's motion for directed verdict?

¶51  The standard of review of a district court's denial of a motion for a directed verdict on the ground of insufficiency of the evidence is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Johnson (1996), 276 Mont. 447, 450, 918 P.2d 293, 294. The crux of Stueck's argument is that Stueck's confession was obtained in violation of Miranda and, without the confession, the State presented insufficient evidence to withstand a motion for directed verdict. We disagree for two reasons. First, as discussed above, Stueck's confession was not obtained in violation of Miranda because Stueck was not in custody when he confessed. Second, in addition to Stueck's confession, the State presented sufficient evidence, when viewed in a light most favorable to the prosecution, to support a jury's finding the essential elements of the crime beyond a reasonable doubt. Therefore, we hold that the District Court did not err in denying Stueck's motion for directed verdict.

Issue 6

¶52  6) Did the District Court err in denying Stueck's motion to dismiss based on destruction of the evidence?

¶53  The morning of trial, the State revealed that physical evidence, which was seized during the search conducted pursuant to the search warrant and items found at the scene of the accident, was misplaced during the relocation of the highway patrol office. Stueck moved to dismiss the charges against him claiming that he would not be able to cross- examine regarding the physical evidence, and that the State could not prove corpus delicti without the physical evidence. The court ruled that the State could proceed with photographs taken by the officers of relevant evidence such as pieces of blue plastic attached to the bumper of Stueck's pickup, a blue paint transfer from Stueck's pickup onto Troth's truck, and pieces of Troth's taillight found on Stueck's bumper.  A proper foundation was laid for admitting the photos into evidence.

¶54  Stueck argues on appeal that the lack of physical evidence in this case "strengthens the defense motions to suppress and dismiss."  In addition, Stueck claims that admission of the photographic evidence was error.  However, Stueck fails to illustrate how he was prejudiced or denied any rights by the State's misplacement of the physical evidence.

¶55  In State v. Close (1994), 267 Mont. 44, 49-50, 881 P.2d 1312, 1315-16, Close argued that the State violated his due process rights by failing to preserve evidence.  We concluded that Close failed to show that the evidence would be of substantial use or would have tended to clear him from guilt.  Close, 881 P.2d at 1316.  As a result, we held that the district court did not err in denying Close's motion to dismiss for failure to preserve evidence. Close, 881 P.2d at 1316.  Likewise, Stueck has failed to show any prejudice or damage to his defense resulting from the misplacement of the physical evidence in this case.  Therefore, we conclude that the District Court did not err in denying Stueck's motion to dismiss based on destruction of the evidence.

Issue 7

¶56  7) Did the District Court err in allowing the State to impeach Kristi with the use of the Justice Court transcript?

¶57  During examination of Kristi, the State asked questions pertaining to testimony Kristi gave at an evidentiary hearing in Justice Court.  The hearing had been tape recorded, and a court reporter produced a written transcript of the tape.  Stueck objected to the use of the transcript from the Justice Court claiming it was not an official record.  The District Court, after hearing foundational testimony from the court reporter, allowed the State to question Kristi about her previous testimony in the Justice Court.  On appeal, Stueck asserts that there was no foundation laid at the Justice Court or by the court reporter that verified the authenticity or history of the tape.

¶58  The standard of review for evidentiary rulings is whether the district court abused its discretion.  State v. Gollehon (1993), 262 Mont. 293, 301, 864 P.2d 1257, 1263.  The court has broad discretion to determine whether or not evidence is relevant and admissible, and absent a showing of an abuse of discretion, the trial court's determination will not be overturned.  Gollehon, 864 P.2d at 1263.  Rule 613(b), M.R.Evid., provides that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."  The District Court's ruling that the State could use the Justice Court transcript to impeach Kristi was not error because the court complied with the Montana Rules of Evidence.  First, the State laid a foundation for admission of the transcript through the testimony of the court reporter in compliance with the authentication requirements of Rule 901(a), M.R.Evid.  Second, at trial the State afforded Kristi an opportunity to explain her prior testimony. Finally, Stueck was afforded an opportunity to interrogate Kristi regarding the

testimony from the Justice Court. Therefore, we hold that the District Court did not abuse its discretion in allowing the State to impeach Kristi with the Justice Court testimony.
Issue 8

¶59  8) Did the cumulative errors in this case prevent Stueck from obtaining a fair trial?

¶60  Finally, Stueck asserts that the cumulative errors in this case prevented him from obtaining a fair trial. In support of his claim, Stueck cites State v. McKenzie (1978), 177 Mont. 280, 581 P.2d 1205. In McKenzie, we explained that "cumulative error" refers to a number of errors which prejudice defendant's right to a fair trial. McKenzie, 581 P.2d at 1226. We held that since no substantial errors were committed, the doctrine of cumulative error did not apply. McKenzie, 581 P.2d at 1226. Likewise, Stueck has failed to establish cumulative errors prejudicing his rights. Therefore, we hold that the doctrine of cumulative error does not apply, and that Stueck was not prevented from obtaining a fair trial. Affirmed.

/S/  W. WILLIAM LEAPHART

We concur:
/S/  J. A.  TURNAGE
/S/  WILLIAM E. HUNT, SR.
/S/  JIM REGNIER
/S/  TERRY N. TRIEWEILER