OPINION
FORD, Justice.
Factual Background
This case arises from a two car accident in Ronan in November of 1996. Defendant William Conko Camel (“Conko”) was allegedly driving eastbound on Terrace Lake Road.[1] The road was icy. His car went into the westbound lane and hit another car head-on. The driver of the westbound car, Sandy Drollman, was badly hurt. Her four minor passengers were also injured.
Conko was cited by tribal police, and later formally charged by the tribal prosecutor, for driving a motor vehicle while under the influence of alcohol or drugs (“DUI”); driving while his license was suspended or revoked; driving without proof of liability insurance; and four counts of negligent vehicular assault.
At the scene of the accident, tribal police allegedly observed signs of alcohol consumption by Conko. They apparently[2] ar *97 rested Conko there and then took Mm to the hospital, intending to test his blood for alcohol content. Conko refused the test. The tribal police officer then instructed the doctor to take the blood forcibly, and the test was performed over Conkle’s objections.
The defendant moved the tribal court to suppress all evidence obtained as a result of the forcible blood testing. Judge Yellow Kidney granted the motion, and suppressed the results of the blood test. The Tribes appeal.
ISSUE ON APPEAL
The issue before this court is whether Judge Yellow Kidney correctly suppressed the results of the forcible blood testing, done over the clear objection of the defendant.
APPLICABLE LAW
The Confederated Salish and Kootenai Tribes have exclusive jurisdiction over misdemeanor crimes committed by Indians, under the Retrocession Agreement of 1993. The Tribes’ Law and Order Code, Section 2-8-401, Traffic Violations, adopts a Montana statute, M.C.A. 61-8-402, as tribal law. That statute provides that anyone operating a motor vehicle on a public road
(1) ... is considered to have given consent, subject to the provisions of 61-8-401, to a test ... of the person’s blood ... for the purpose of determining any measured amount or detected presence of alcohol or drugs in the person’s body if arrested by a peace officer for driving or for being in actual physical control of a vehicle while under the influence of alcohol, drugs, or a combination of the two. The test ... must be administered at the direction of a peace officer who has reasonable grounds to believe that the person has been driving or has been in actual physical control of a vehicle ... while under the influence of alcohol, drugs, or a combination of the two. The arresting officer may designate which test or tests are administered. (1995)
Thus, under the tribal statute, the tribal police had the authority to request and administer the blood test, so long as the defendant did not object. The blood test would have been admissible in evidence at any subsequent criminal proceeding.
However, this particular defendant did object and refused to submit to the test requested by the officer. Subpart (3) of the same statute governs the situation in this case:
If a driver under arrest refuses upon the request of a peace officer to submit to a test or tests designated by the arresting officer as provided in subsection (1), a test may not be given, but the officer shall, on behalf of the department, immediately seize the person’s driver’s license. The peace officer shall immediately forward the license to the department, along with a sworn report noting that the peace officer had reasonable grounds to believe that the arrested person had heed driving ... while under the influence of alcohol ... and noting that the person refused to submit to the test or tests upon the request of the peace officer.... Upon receipt of the report, the department shall suspend the license ... (1995)
Subpart (7) specifically deals with the tribal-state relationship in the case at bar:
(7) The department may recognize the seizure of a license of a tribal member by a peace officer acting under the authority of a tribal government or an order issued by a tribal court ... if the actions are conducted pursuant to tribal law or regulation requiring alcohol or drug testing of motor vehicle operators *98 and the conduct giving rise to the actions occurred within the exterior boundaries of a federally recognized Indian reservation in this state.
DISCUSSION
This tribal statute is clear. When the defendant objects, the test may not be given. The issue we face is what happens if, despite the clear language of the law, the police do forcibly give the test anyway.
The Confederated Salish and Kootenai Court of Appeals has never ruled on this issue. Montana has construed its identical statute in a series of cases cited by the defendant, which basically hold that the test results are not admissible at trial. In the state of Montana, blood samples drawn in violation of the statute are inadmissible in prosecutions for driving under the influence, State v. Mangels, 166 Mont. 190, 531 P.2d 1313 (1975) and inadmissible in prosecutions for negligent vehicular assault, State v. Stueck, 280 Mont. 38, 929 P.2d 829 (1996). However, State v. Thompson, 207 Mont. 433, 674 P.2d 1094 (1984) held that Section 61-8-402 does not apply to negligent homicide prosecutions, and a blood test taken over the objection of the defendant is admissible in such cases.
At the time of the blood test in this case; it-is clear that defendant had been arrested. Defense counsel contended at oral argument that the arrest was for driving under the influence and lack of insurance only, and that the citations for negligent vehicular assault were not issued until sometime after the blood test.[3] The prosecution for which the blood test is offered is for both dui and negligent vehicular assault.[4] No one died as a result of Conko’s accident; there is no prosecution for negligent homicide. Thus, under Montana law, the blood test would clearly be inadmissible and the motion to suppress would be granted.
The Montana cases construing the state statute are persuasive but not binding on this court. As a matter of tribal sovereignty, this court has the power to adopt the construction of the tribal code provisions which the court finds best-reasoned. The Montana cases do not explain clearly why Montana holds that the penalty for violating the statute and taking the blood over the defendant’s objection is suppression of the evidence. It seems, though, that the rationale must be that any other result would provide an incentive to law enforcement to ignore the clear language of the statute. If law enforcement obeyed the statute and did not take the blood test, it would not have had any test results to buttress its case at trial. In effect, violating the statute adds evidence to the tribes’ case. Suppressing the evidence puts law enforcement in the same position it would have been in if it had obeyed the statute.
On the other hand, the tribal prosecutor contends, suppressing the evidence would deprive the court, whether judge or jury, of important information about the defendant’s condition at or near the time of the *99 accident. The tribes’ code reflects a clear policy against driving while intoxicated, which arguably would not be served by letting a defendant frustrate law enforcement’s attempt to gather relevant evidence by refusing the blood test.
Having considered all of the arguments in favor of the parties’ positions, this Court finds that the exclusion of the results of any forcibly obtained blood test in any subsequent prosecution for driving under the influence or for negligent vehicular assault[5] will best serve the Tribes, and so holds. The rule we announce today is clear and unambiguous, and fairly balances the rights of the tribes and individual defendants.
OTHER OPTIONS OPEN TO LAW ENFORCEMENT
The Court adamantly opposes driving under the influence of alcohol or drugs, as well as vehicular assault and homicide resulting from such influence. Today’s decision does not deprive law enforcement of the ability to convict perpetrators of these crimes. It does ensure that law enforcement follow both the spirit and the letter of the implied consent blood testing law in accumulating evidence for a prosecution, and it deters potential overreaching at the expense of defendants’ lights.
In this case, when Conko objected to the test, the tribal police had two legal courses of action open to them. First, they could have moved the court for the issuance of a search warrant, authorizing the blood test. The search warrant route provides the defendant with additional protection beyond the investigating officer’s individual judgment as to whether probable cause existed:
Search warrants are ordinarily required for searches of dwellings, and absent an emergency, no less could be required where intrusions into the human body are concerned. The requirement that a warrant be obtained is a requirement that the inferences to support the search “be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime.” [Citations omitted].
Schmerber v. California, 384 U.S. 757, 770, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966).
The second course of action open to the tribal police appears in the statute itself: forego the blood test but penalize the defendant for refusing to cooperate by seizing his or her driver’s license and sending it back to the state with the appropriate certification. The state would then suspend the license. The tribes could continue with their prosecution for dui and any related charges, but without the blood test. This ruling does not affect the tribes’ ability to present other types of evidence, such as eyewitness testimony, videotapes of the defendant, and field sobriety tests, any one of which alone might suffice as a basis for conviction.
The tribal council, in adopting the statute, clearly stated that tribal police officers should not forcibly take blood when the defendant objects and established the license suspension penalty for that objection. Allowing the police to act directly contrary to this statute and then reap the reward for that violation in the form of enhanced evidence against the defendant would defeat the council’s-purpose. If the tribal prosecutors believe that police should be empowered to forcibly test blood of defendants in dui and other related cases, they should convince the tribal council to change the statute. As it is presently written, the statute is quite clear and *100 our holding comports with its apparent legislative intent. Thus, we affirm the decision of the trial court judge and suppress the blood test results in this case, regardless of whether the prosecutor proceeds on the basis of driving under the influence or negligent vehicular assault.

. The charging documents indicate that at the scene of the accident, Camel denied that he was the driver of the car. It is unclear whether this is still an issue for trial.

, The record on appeal does not contain the officers’ reports, although they are referred to in the parties' briefs.

. This is consistent with the Probable Cause Affidavit filed by the Tribal Prosecutor in support of the original criminal complaint, which states: "Officer Vollin reported that he placed the defendant under arrest for DUI and requested a blood sample, which the defendant refused.” The Supplemental Probable Cause Affidavit filed in support of the amended complaint has similar language.

. At argument, the prosecutor indicated that he intended to offer the BAC evidence in support of the vehicular assault charges only, and not for the purpose of convicting on the dui charge. He indicated that he had not thought through how this would in fact occur, and offered that he would consider dropping the dui charge altogether to facilitate this position.

. This case does not involve vehicular homicide.